VANDER LAAN v MULDER

Docket No. 104890. Submitted August 17, 1988, at Grand Rapids.
Decided July 6, 1989.

Sharlyn Vander Laan, a dental hygienist, employed by Dr. J. B.
Mulder, was discharged after she persisted in sharing her
religious faith with Dr. Mulder's patients contrary to Dr.
Mulder's directions. She applied for unemployment compensa-
tion and was denied, the Employment Security Commission
Board of Review holding that she was disqualified by virtue of
misconduct. She appealed and the Kent Circuit Court, George
R. Cook, J., affirmed. Vander Laan appealed.

The Court of Appeals *held:*

1. The term misconduct, as used in connection with disqualifi-
cation of an employee for unemployment compensation bene-
fits, is limited to conduct evincing such wilful or wanton
disregard of an employer's interests as is found in deliberate
violations or disregard of standards of behavior which the
employer has the right to expect of his employee, or in careless-
ness or negligence of such degree or recurrence as to manifest
equal culpability, wrongful intent or evil design, or to show an
intentional and substantial disregard of the employer's inter-
ests or of the employee's duties and obligations to his employer.
There was sufficient evidence of misconduct.

2. Denial of benefits did not violate claimant's First Amend-
ment right to free exercise of religion. A state's conditioning
receipt of an important benefit upon conduct proscribed by a
religious faith or denying such a benefit because of conduct
mandated by religious belief is prohibited by the Free Exercise
Clause of the First Amendment. By her own admission she did
what she did as a matter of personal choice, not because of the
dictates of her religion.

3. Denial of benefits did not deny claimant her First Amend-
ment right of freedom of speech.

Affirmed.

REFERENCES

Am Jur 2d, Constitutional Law §§ 471, 490; Unemployment Com-
pensation §§ 52-58.

Employee's *insubordination as barring unemployment compensa-
tion.* 26 ALR3d 1333.

1. UNEMPLOYMENT COMPENSATION — MISCONDUCT.

> The term misconduct, as used in connection with disqualification of an employee for unemployment compensation benefits, is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer (MCL 421.29[1][b]; MSA 17.531[1][b]).

2. CONSTITUTIONAL LAW — FIRST AMENDMENT — FREE EXERCISE OF RELIGION.

> A state's conditioning receipt of an important benefit upon conduct proscribed by a religious faith or denying such a benefit because of conduct mandated by religious belief is prohibited by the Free Exercise Clause of the First Amendment (US Const, Am I).

*Keith J. Beauchemin,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Morris J. Klau,* Assistant Attorney General, for respondent.

Before: MACKENZIE, P.J., and MCDONALD and R. E. ROBINSON,* JJ.

PER CURIAM. Petitioner appeals as of right from a circuit court order affirming the Michigan Employment Security Commission Board of Review's finding of misconduct by petitioner, MCL 421.29(1)(b); MSA 17.531(1)(b), and disqualifying her from receiving unemployment compensation benefits. We affirm.

Petitioner began employment with Dr. Miller, D.D.S., as a dental hygienist in the mid-1970's. She began working for respondent Dr. Mulder (respon-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

dent) in July, 1984, when he purchased Miller's dental practice.

Prior to the sale of the practice, Dr. Miller mentioned to respondent that for the last 1½ years petitioner had been regularly describing to the patients whose teeth she was cleaning how Jesus Christ had changed her life, an activity which petitioner called "sharing her faith." Shortly after taking over the practice, respondent warned petitioner that she should discontinue sharing her faith since patients had complained that it made them uncomfortable. Petitioner nevertheless continued. During the ensuing months, respondent lost at least six patients because of petitioner's sharing. Other patients insisted respondent, rather than petitioner, clean their teeth if respondent was going to continue to treat them. More warnings were issued; despite respondent's assurances that petitioner could do whatever witnessing she cared to on her own time, petitioner continued to share her faith at work. After receiving and failing to heed approximately twelve to fifteen warnings, petitioner was discharged from employment in March, 1986.

Petitioner's application for unemployment compensation benefits was denied on grounds of misconduct, MCL 421.29(1)(b); MSA 17.531(1)(b). Petitioner requested a redetermination, stating "I was unable to control my joy and had to share it with someone. I did not do this as an act of defiance. Jesus Christ changed my life and I wanted to share that." Following a referee hearing, at which three patients testified on behalf of petitioner that her sharing was not offensive to them, the commission's determination of misconduct was upheld. The referee's decision was affirmed by the board of review. The circuit court likewise affirmed the decision of the board of review.

Petitioner first contends that the board of review's finding of misconduct was not supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540. We disagree.

In *Carter v Employment Security Comm,* 364 Mich 538; 111 NW2d 817 (1961), our Supreme Court defined misconduct as follows:

> "The term 'misconduct' . . . is limited to conduct evincing such *wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee,* or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." [364 Mich 541, quoting *Boynton Cab Co v Neubeck,* 237 Wis 249, 259, 260; 296 NW 636 (1941). Emphasis added.]

In this case, there was competent, material, and substantial evidence on the record to support the finding of misconduct. There was evidence that patients had expressed displeasure over petitioner's sharing her faith and that petitioner was aware of the complaints. Respondent lost patients because of petitioner's sharing. There was evidence that respondent had to assume a portion of petitioner's work load because patients did not want to listen to her while having their teeth cleaned. This

was clearly contrary to the employer's interests. Further, a dentist has the right to expect his dental hygienist, whose work is often painful and requires the patient to be verbally and physically submissive, to behave in a manner which does not add more discomfort to a patient's already uncomfortable situation. Nevertheless, there was evidence that petitioner deliberately and repeatedly disregarded warnings by respondent to discontinue her sharing because it was making a number of patients uncomfortable. The record fully supports the board's finding of misconduct.

Petitioner also contends that the denial of unemployment compensation violates her First Amendment right of free exercise of religion. Again, we disagree.

The First Amendment bars the government from prohibiting the free exercise of religion. In order for a free exercise claim to have merit, it must be based on state action. *Abington Twp, Pa, School Dist v Schempp,* 374 US 203, 226; 83 S Ct 1560; 10 L Ed 2d 844 (1963). Hence, when a former employee is denied unemployment compensation benefits, the employer's conduct is not at issue; the question is whether "the state condition[ed] receipt of an important benefit upon conduct proscribed by a religious faith, *or . . . denie[d] such a benefit because of conduct mandated by religious belief.*" *Thomas v Review Bd of the Indiana Employment Security Division,* 450 US 707, 717-718; 101 S Ct 1425; 67 L Ed 2d 624 (1981). (Emphasis added.)

In *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963), a Seventh Day Adventist was discharged for her refusal to work on Saturday, the Sabbath, and was subsequently deemed ineligible to receive unemployment compensation benefits. The Court stated that if "the decision . . . is to withstand appellant's constitutional chal-

lenge, it must be . . . because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise . . . ." 374 US 403. The Court then characterized the denial of benefits as follows:

> The ruling forces her to choose between *following the precepts of her religion* and forfeiting benefits, on the one hand, and *abandoning one of the precepts of her religion* in order to accept work, on the other hand. [374 US 404. Emphasis added.]

Because the claimant was forced to forego benefits by exercising her religious beliefs, her disqualification was in violation of the First Amendment.

In *Thomas v Review Bd, supra,* the claimant was a Jehovah's Witness who quit his employment when he was assigned to a department which produced armaments. He was determined to be ineligible for unemployment compensation. Relying on *Sherbert,* the Court reversed, finding that the claimant had been "put to a choice between fidelity to *religious belief* or cessation of work." 450 US 717. (Emphasis added.)

In *Hobbie v Unemployment Appeals Comm of Florida,* 480 US 136; 107 S Ct 1046; 94 L Ed 2d 190 (1987), the claimant, after 2½ years of employment, informed her employer that she was to be baptized into the Seventh Day Adventist Church and that for religious reasons she would no longer be able to work on her Sabbath. She was ultimately discharged and denied unemployment compensation benefits. The Supreme Court reversed, relying on *Sherbert* and *Thomas.*

We again affirm, as stated in Thomas:

> "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious

faith, *or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs,* a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." 450 US at 717-718; 67 L Ed 2d 624; 101 S Ct 1425 (emphasis added). [480 US 141.]

In *Sherbert, Thomas,* and *Hobbie,* the claimants were all put to a choice between adherence to their religious convictions or termination of employment. They were all deemed ineligible to receive unemployment compensation benefits because they chose to follow their religious beliefs or the precepts of their religions. In each case, denial of unemployment benefits was determined to be unconstitutional because it amounted to a forfeiture of benefits for remaining faithful to religious convictions.

In this case, unlike *Sherbert, Thomas,* and *Hobbie,* there is no indication that petitioner's sharing her faith was "mandated by religious belief," *Thomas, supra,* or by any religious precept requiring her to evangelize. Instead, the record fully supports the conclusion that petitioner's sharing was strictly personally motivated. She was not proselytizing, but merely wished to let others know of her personal fulfillment:

*Q.* . . . What does it mean, if you share your faith?

*A.* Well, for me—in Jesus Christ I found the love that I was so desperately looking for. When I think of the God of glory who loved me so much that he was willing to die for me and give me a new life—and he changed my life and turned my life around with the healing in my life and changes in my life, and I attempted to share the

love and the joy and the peace that I was finding, that I found in him. And the people that I was cleaning their teeth, to me they were people, people that I knew over a period of time and people that I cared about and knew that they had hurt and needs and—just as we all do. And I also knew that Jesus Christ is able to meet those needs and to heal those hurts. And that's what I was attempting to share. And I shared my own experience as to where I found healing and where I found love and where I found peace and joy.

\* \* \*

*Q.* Is it your religious conviction that you have to talk [with] people and tell them this?

*A.* Well, I—my motivation, if I may put it that way, okay, I believe that Jesus Christ is Lord, and he is the King of all creation, and I believe that. And he loves me, and it's that love that I want to share. I don't—he does command us in the Bible to be a witness for him, to be a testimony to him. And I do that because of who he is and because of what he has done for me, not because I feel that—not out of guilt or demand, okay. The, the Bible does command us, but I do it—I share him, because I feel I have something to share, something that people need . . .

*Q.* Thank you.

*A.* . . . love and peace and joy.

It is apparent that petitioner was not put to a choice between adhering to her religious convictions or losing her job. As she stated, her sharing her faith—the conduct for which she was determined to be ineligible for benefits—was not motivated by religious command but by her desire to communicate her contentment to others and to help others. Curtailment of this sharing did *not* force her to compromise her religious convictions or else lose her job; it merely forced her to curb her enthusiasm when dealing with patients. In short, petitioner forfeited unemployment benefits

for choosing for personal reasons *to discuss* her religious beliefs and not because she adhered to those beliefs. The denial of unemployment compensation benefits did not violate the free exercise clause of the First Amendment.

In a brief argument, petitioner also contends that the state has unconstitutionally abridged her First Amendment right of freedom of speech by denying her unemployment compensation benefits, citing *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). Suffice it to say that the denial of benefits was not taken to restrain petitioner from voicing her ideas but was taken because it was found that she was guilty of wilful misconduct for interfering with the operation of her employer's business and disregarding his reasonable standards of conduct. Petitioner had countless opportunities outside the workplace to communicate by mail, telephone, spoken word, or any other means the nature of her spiritual fulfillment. The record shows she felt free to take advantage of such opportunities. We find no First Amendment freedom of speech violation.

Affirmed.