# STATE OF MICHIGAN

# COURT OF APPEALS

RICK BRASKA,

  Claimant-Appellee,

v

CHALLENGE MANUFACTURING COMPANY,

  Appellee,

and

DEPARTMENT OF LICENSING &
REGULATORY AFFAIRS, UNEMPLOYMENT
INSURANCE AGENCY

  Appellant.

FOR PUBLICATION
October 23, 2014
9:00 a.m.

No. 313932
Kent Circuit Court
LC No. 12-004685-AE

---

JENINE KEMP,

  Claimant-Appellee,

v

HAYES GREEN BEACH MEMORIAL
HOSPITAL,

  Appellee,

and

DEPARTMENT OF LICENSING &
REGULATORY AFFAIRS, UNEMPLOYMENT
INSURANCE AGENCY,

  Appellant.

No. 315441
Ingham Circuit Court
LC No. 12-000994-AE

---

STEPHEN KUDZIA,

      Claimant-Appellee,

v                                               No.  318344
                                               Macomb Circuit Court

AVASI SERVICES, INC,                    LC No.  2013-001723-AE

      Appellee,

and

DEPARTMENT OF LICENSING &
REGULATORY AFFAIRS, UNEMPLOYMENT
INSURANCE AGENCY,

      Appellant.

Before:  BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM

      In these consolidated appeals, the Department of Licensing and Regulatory Affairs, Unemployment Insurance Agency (Department), appeals by leave granted circuit court orders holding that claimants were entitled to unemployment benefits. In Docket No. 313932, the Department appeals a November 9, 2012 Kent Circuit Court order reversing a decision of the Michigan Compensation Appellate Commission (MCAC) that claimant Rick Braska was disqualified from receiving unemployment benefits. In Docket No. 315441, the Department appeals a March 5, 2013 Ingham Circuit Court order reversing the decision of the MCAC that claimant Jenine Kemp was disqualified from receiving unemployment benefits. In Docket No. 318344, the Department appeals a September 5, 2013 Macomb Circuit Court order reversing the decision of the MCAC that claimant Stephen Kudzia was disqualified from receiving unemployment benefits. The common issue presented in the three cases is whether an employee who possesses a registration identification card under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421, *et seq.*, is disqualified from receiving unemployment benefits under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, after the employee has been terminated failing to pass a drug test.[1] For the reasons set forth in this opinion, we affirm the circuit court orders finding that claimants were entitled to unemployment benefits.

---

[1] Although the MMMA uses the spelling "marihuana," we use the more common spelling "marijuana" throughout this opinion. In addition, we will use the phrase "medical marihuana card" to refer to a "registration identification card."

-2-

## I. BACKGROUND

### *Braska v Challenge Manufacturing Co (Docket No. 313932)*

Braska began working for Challenge Manufacturing Company (Challenge) as a material handler/hi-lo operator in September 2009. On June 11, 2010, Braska injured his ankle and was sent to a medical center where he was required to take a mandatory drug test. Braska tested positive for marijuana and disclosed for the first time that he obtained a medical marihuana card in May 2010, and that he regularly used medical marijuana for his chronic back pain. Challenge terminated Braska's employment for violation of the company's drug-free workplace policy as set forth in the employee handbook.

Dr. Richard Rasmussen, certified as a medical review officer for drug tests, reviewed the "results verification record," which was a printout of the laboratory results that was given to him. He signed the record on June 15, 2010. The results verification record showed that Braska tested positive for marijuana. There were 225 nanograms per milliliter, which, according to Rasmussen, was "higher than the average." According to Rasmussen and Dr. David Crocker, there are no objective standards to determine when someone is under the influence of marijuana.

Following his termination, Braska applied for unemployment benefits. On July 6, 2010, the Unemployment Insurance Agency (UIA) found that Braska was not fired for a deliberate disregard of his employer's interest. It concluded that Braska was not disqualified for unemployment benefits under MCL 421.29(1)(b) for engaging in misconduct. Challenge protested the determination, and the UIA modified its decision, finding that Braska was discharged for testing positive for marijuana on a drug test. Although failing a drug test would ordinarily disqualify Braska from receiving benefits under MCL 421.29(1)(m), the UIA determined that because Braska had a valid medical marihuana card, he was not disqualified for unemployment benefits under MCL 421.29(1)(m).

Challenge appealed the redetermination and a hearing was held before an administrative law judge (ALJ). At the hearing, the ALJ excluded the results verification record, as well as a "specimen result certification" that Rasmussen sent to Challenge from evidence because of problems in the chain of custody of Braska's urine sample. At the conclusion of the hearing, the ALJ found that Braska was fired for testing positive for marijuana, not general misconduct. The ALJ noted that an employer is required to establish, as a foundational element to the admission of the results of a drug test, that the sample analyzed was the sample collected from the employee. Here, Challenge failed to produce any witness to establish how the drug test was conducted and how the sample test was handled. According to the ALJ, in the absence of this foundational testimony, the test results were inadmissible hearsay and disqualification from unemployment benefits could not be established on such an unreliable foundation.

Recognizing that there may be disagreement on the adequacy of the evidence presented by Challenge, the ALJ addressed the effect of Braska's possession of a medical marihuana card. The ALJ noted that it surpassed credulity to believe that Braska had the card but did not use medical marijuana and that Braska specifically did not ask for a retest when one was offered by Rasmussen. The ALJ found that there was no evidence that Braska operated a hi-lo under the

influence of marijuana. Therefore, the ALJ concluded that Braska was not disqualified from receiving unemployment benefits under § 29(1)(m).

Challenge appealed the ALJ's decision to the MCAC, and the MCAC reversed. The MCAC concluded that the only question for the admission of a document in an administrative hearing is whether reasonable people would rely on the document. It found that all the documents offered by Challenge were reliable. The MCAC noted that the ALJ allowed Braska to collect unemployment benefits because he possessed a medical marihuana card. The MCAC concluded this amounted to error where Challenge only needed to present evidence that Braska tested positive on a drug test that was administered in a nondiscriminatory manner to disqualify Braska from receiving benefits. It found that the preponderance of the evidence established that Braska was disqualified from receiving benefits under § 29(1)(m).

Braska appealed the MCAC's decision to the circuit court and the circuit court reversed. The court held that the MCAC's decision that Braska was disqualified from receiving benefits was not supported by competent, material, and substantial evidence. The court stated that the MCAC failed to address the ALJ's interpretation and application of the MMMA and the MESA, but the court declined to address those issues, instead, reasoning that the MCAC's decision was not supported by competent, material, and substantial evidence. This Court granted the Department's application for leave to appeal the circuit court's order.

*Kemp v Hayes Green Beach Memorial Hospital (Docket No. 315441)*

Kemp worked for Hayes Green Memorial Hospital (Hayes Green) as a CT technician. Hayes Green had a zero-tolerance drug policy. Employees were tested for drugs upon hire and then upon reasonable suspicion. In May 2011, a patient complained about Kemp. Kemp had inserted an IV line in the patient without using gloves, discussed the patient's insurance coverage in a crowded area, and told the patient about her family's drug use, including that she ate "special brownies."

On June 2, 2011, following an investigation into the complaint, Jennifer Myers, the human resource manager for Hayes Green, told Kemp that she needed to take a drug test. Kemp consented, and she wrote on the consent form that she used medical marijuana. At the meeting, Kemp showed no objective signs of intoxication. Kemp tested positive for marijuana and delta–9–tetrahydrocannabinol (THC). A confirmation test confirmed the results. On June 8, 2011, Myers informed Kemp that she was terminated. The reason for the termination was the failed drug test.

Kemp suffered from lupus, neuropathy, and chronic pain in her hand. She obtained a medical marihuana card in December 2010 and it was valid in May 2011, when she was terminated. According to Kemp, she was never under the influence of marijuana at work. She used marijuana between 6:00 p.m. and 7:00 p.m., and the effects were usually gone within two hours. Her shift at Hayes Green was from 6:30 a.m. to 3:00 p.m.

Following her termination, Kemp applied for unemployment benefits. The UIA initially determined that, because Kemp was terminated for testing positive for an illegal substance, she was disqualified from receiving benefits under § 29(1)(m). The UIA reversed its decision after

-4-

Kemp provided documentation that she possessed a medical marihuana card. Hayes Green protested, and a hearing was held before an ALJ. The ALJ affirmed the UIA's redetermination that Kemp was not disqualified from receiving unemployment benefits. The ALJ explained that because marijuana was legally available to use for medical purposes, the issue whether Kemp's use of marijuana constituted misconduct or was illegal must include consideration of the MMMA. Because Kemp used marijuana for medical purposes, her use was lawful and, therefore, could not bar her receipt of benefits.

Hayes Green appealed, and the MCAC reversed the ALJ's decision. The MCAC concluded that Kemp was disqualified from receiving unemployment benefits under § 29(1)(m). It reasoned that the MMMA only allows possession and consumption of marijuana; it does not regulate private employment and offer employment protection.

Kemp appealed to the Ingham Circuit Court and the circuit court reversed the MCAC's decision. The circuit court noted that, although a federal court held that the MMMA did not prohibit a private employer from firing an employee who used medical marijuana, the present case involved state action. The MESA, and specifically § 29, is enforced and interpreted by a state agency. Because there was state action, the MMMA was applicable and needed to be considered in determining whether Kemp was disqualified from receiving unemployment benefits. According to the circuit court, an employee, who uses medical marijuana but is not intoxicated at work, is not disqualified from receiving benefits under § 29(1)(m). It noted that the benefit interpretation by the UIA provided that an employee who uses medical marijuana should not be disqualified from benefits unless the employee is in possession of marijuana at work, under the influence at work, or uses it at work. Specifically, regarding Kemp, the circuit court stated that Kemp did not fall under any of the three categories and that there was no evidence that she used medical marijuana other than as allowed by the MMMA. According to the circuit court, any disqualification from unemployment benefits would amount to a forfeiture of benefits to which Kemp was otherwise qualified to receive, which constituted an impermissible penalty under the MMMA.

In reaching its conclusion, the circuit court rejected the Department's argument that Kemp tested positive for marijuana at work and that her discharge was akin to testing positive for any other intoxicating or illegal substance, such as Vicodin. It noted that the record did not show that Kemp tested positive for active marijuana. Rather, she tested positive for a substance known as "11-carboxy-THC," which is not a schedule 1 controlled substance and has no pharmacological effect on the body. Thus, according to the circuit court, the drug test simply demonstrated what Kemp had informed Hayes Green of before the test—she used medical marijuana. This Court granted the Department's application for leave to appeal the circuit court's order.

*Kudzia v Avasi Services Inc (Docket No. 318344)*

Kudzia worked as an in-home service technician for Avasi Services, which was the "in-store union" for Art Van employees. He repaired furniture in customers' homes. Art Van was a drug-free company. It subjected the employees who drove an Art Van vehicle to random drug tests. On June 21, 2012, Daryl Smith, the service manager for Avasi Services advised Kudzia that he had to report for a random drug test. Kudzia, who showed no signs of intoxication, said

nothing in response. According to Dr. Stuart Hoffman, a medical review officer, Kudzia tested positive for "metabolized marijuana." On June 27, 2012, Smith met with Kudzia and informed him that he was discharged because of the failed test. Kudzia did not dispute the test results, and informed Smith that he had a medical marihuana card.

In the past, Kudzia had undergone two surgeries on his knees. In July 2010, he received a medical marihuana card, which was valid through July 2012. After he received the card, Kudzia used a cream on his knees.

The UIA found that Kudzia was discharged for testing positive on a drug test. It determined that he was not disqualified from receiving benefits under § 29(1)(m). Avasi Services appealed, and a hearing was held before an ALJ. The ALJ held that Kudzia was disqualified from receiving benefits under § 29(1)(b) (misconduct). The ALJ explained that no law prohibited an employer from having a policy that prohibited the use or possession of controlled substances. Kudzia acted in direct contravention of his employer's policy, as he did not request an exemption to use medical marijuana. However, the hearing referee also concluded that Kudzia was not disqualified from receiving benefits under §29(1)(m). There was no evidence that Kudzia used medical marijuana in contravention of the MMMA.

Kudzia appealed, and the MCAC affirmed the ALJ's decision on different grounds. It reasoned that an employee who tests positive for a controlled substance is disqualified from receiving benefits under § 29(1)(m). Kudzia appealed the MCAC's decision to the Macomb Circuit Court and the circuit court reversed. First, the circuit court held that, to the extent that provisions of the MMMA and the MESA conflicted, the MMMA controlled. Second, it held that, although the MMMA does not impose restrictions on private employers, the MMMA applied to state action and the MCAC's decision to deny Kudzia benefits was an action by the state. The circuit court then held that Kudzia's use of medical marijuana implicated § 29(1)(m) because the MMMA did not legalize the use of marijuana. Nonetheless, the circuit court determined that the disqualification from benefits was contrary to the MMMA because it was a penalty or the denial of a right or privilege for the medical use of marijuana. The circuit court rejected the Department's argument that Kudzia's behavior was impermissible under the MMMA. It explained that Kudzia tested positive for marijuana metabolites and that it did not follow, from the presence of the metabolites, that Kudzia had ingested marijuana in the workplace or that he was under the influence of marijuana during work hours. This Court granted the Department's application for leave to appeal the circuit court's order.

## III. STANDARD OF REVIEW

The issue whether unemployment benefits may be denied to an individual who, after using medical marijuana in accordance with the MMMA, is discharged after testing positive on a drug test was raised before the circuit courts in all three cases. The issue was decided by the circuit courts in the Kemp case and the Kudzia case and is therefore is preserved in those two cases. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). Although the issue was not decided by the circuit court in the Braska case, the issue involves an issue of statutory interpretation, the facts necessary for its resolution are present, and it is dispositive of the appeal; therefore we will address the issue in all three cases. See *State Treasurer v Snyder*, 294 Mich App 641, 645; 823 NW2d 284 (2011).

-6-

A decision by the MCAC is subject to review by a circuit court pursuant to MCL 421.38, which provides in relevant part as follows:

> The circuit court . . . may review questions of fact and law on the record made before the administrative law judge and the [MCAC] involved in a final order or decision of the [MCAC], and may make further orders in respect to that order or decision as justice may require, but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record. . . .

"This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). In other words, the circuit court's legal conclusions are reviewed de novo and its factual findings are reviewed for clear error. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

These appeals involve issues of statutory interpretation, which are questions of law that we review de novo. *Id.* "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Id.* at 38. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted; the statute must be enforced as written. *Klooster v City of Charlevoix*, 488 Mich 289, 311; 795 NW2d 578 (2011). Regarding voter-initiated statutes such as the MMMA, the intent of the electors governs the interpretation of the statute. *Michigan v McQueen*, 493 Mich 135, 147; 828 NW2d 644 (2013). The statute's plain language is the most reliable evidence of the electors' intent. *Id.*

## III.  ANALYSIS

### i. The MESA

When it enacted the MESA, the Legislature declared that "[e]conomic insecurity due to unemployment is a serious menace" and that "[t]he systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own . . . is for the public good, and the general welfare of the people of this state." MCL 421.2(1).

An individual must be eligible to receive unemployment benefits under the MESA. Initially, an individual must meet certain threshold requirements set forth in MCL 421.28 such as, among other things, filing a claim for benefits and seeking employment. See MCL 421.28(1)(a), (b), (c). In the event an individual meets the threshold requirements of § 28, he or she may nevertheless be disqualified from receiving benefits under MCL 421.29, which provides in pertinent part as follows:

(1) Except as provided in subsection (5), an individual is disqualified from receiving benefits if he or she:

\* \* \*

(b) Was suspended or discharged for misconduct connected with the individual's work or for intoxication while at work.

\* \* \*

(m) Was discharged for illegally ingesting, injecting, inhaling, or possessing a controlled substance on the premises of the employer; refusing to submit to a drug test that was required to be administered in a nondiscriminatory manner; or testing positive on a drug test, if the test was administered in a nondiscriminatory manner . . . .

(*i*) "Controlled substance" means that term as defined in section 7104 of the public health code, 1978 PA 368, MCL 333.7104.[2]

(*ii*) "Drug test" means a test designed to detect the illegal use of a controlled substance. [Emphasis added.]

### ii. The MMMA

The MMMA was approved by the state electors in November 2008. *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012). In approving the MMMA, the state electors found that, according to modern medical research, there were beneficial uses for marijuana in treating or alleviating the effects of a variety of debilitating medical conditions. MCL 333.26422(a). "The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana. . . ." *Kolanek*, 491 Mich at 393. However, the MMMA did not legalize the use or possession of marijuana in all contexts. *People v Koon*, 494 Mich 1, 5; 832 NW2d 724 (2013). Marijuana remains a schedule 1 controlled substance. *Id.*[3] "The MMMA does *not* create a

---

[2] A "controlled substance" is defined in MCL 333.7104(2) as "a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72."

[3] Marijuana is listed as a schedule 1 controlled substance under the Public Health Code, MCL 333.1101 *et seq.* MCL 333.7212(1)(c). In 2013, the Legislature amended MCL 333.7212, adding § 2, which reclassified marijuana as a schedule 2 controlled substance "if it is manufactured, obtained, stored, dispensed, possessed, grown, or disposed of in compliance with this act and as authorized by federal authority." 2013 PA 268. MCL 333.7214, the list of schedule 2 controlled substances was also amended, *id.*, and it now provides that marijuana is a schedule 2 controlled substance "but only for the purpose of treating a debilitating medical condition as that term is defined in [the MMMA], and as authorized under this act." MCL 333.7214(e). Marijuana remains listed as a schedule 1 controlled substance under federal law. 21 USC 812.

general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law." *Kolanek*, 491 Mich at 394. See also *Ter Beek v Wyoming*, 495 Mich 1, 15; 846 NW2d 531 (2014) ("[I]ts possession, manufacture, and delivery remain punishable offenses under Michigan law.").

The MMMA functions by granting immunity from arrest, prosecution, or penalty. *Koon*, 494 Mich at 5. Section 4 of the MMMA provides, in pertinent part:

> A qualifying patient who has been issued and possesses a registry identification card *shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege*, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marijuana in accordance with this act. . . . [MCL 333.26424(a) (emphasis added).][4]

The MMMA's immunity applies only if medical marijuana is used in accordance with the provisions of the MMMA. MCL 333.26427(a). The MMMA does not permit any person to "[u]ndertake any task under the influence of marijuana, when doing so would constitute negligence or professional negligence" or to "[o]perate, navigate, or be in actual physical control of any motor vehicle, aircraft, or motorboat while under the influence of marijuana." MCL 333.26427(b)(1), (4). In addition, nothing in the MMMA may be construed to require an "employer to accommodate the ingestion of marijuana in any workplace or any employee working while under the influence of marijuana." MCL 333.26427(c)(2).

The MMMA also contains a broad preemption clause to ensure that qualifying individuals who adhere to the terms of the MMMA do not suffer penalties for their use of marijuana for medicinal purposes. Specifically, MCL 333.26427(e) provides "[a]ll other acts and parts of acts inconsistent with this act do not apply to the medical use of marijuana as provided for by this act." Thus, to the extent another law would penalize an individual for using medical marijuana in accordance with the MMMA, that law is preempted by the MMMA. *Koon*, 494 Mich at 8-9.

### *iii. Application*

The central issue presented in these three appeals is whether an employee, who possesses a medical marihuana card and is discharged after failing a drug test, may be denied unemployment benefits. To resolve this issue, we must examine the interplay between the MESA and the MMMA. Specifically, we must first determine whether claimants: (1) met the threshold requirements for unemployment compensation under the MESA, (2) whether claimants were nevertheless disqualified from receiving benefits under one of the MESA's disqualification provisions, and (3), to the extent claimants were disqualified for testing positive for marijuana,

---

[4] The MMMA also grants a "patient" an affirmative defense, under certain circumstances, to any prosecution involving marijuana. MCL 333.26428.

we must determine whether the MMMA nevertheless provides immunity and preempts the MESA.

With respect to the MESA, none of the parties dispute that claimants met the threshold requirements for unemployment benefits under MCL 421.28. The MCAC found claimants disqualified for benefits under § 29(1)(m). As set forth above, that statutory provision disqualifies an individual for the following conduct: (1) illegally ingesting, injecting, inhaling or possessing a controlled substance "on the premises of the employer," (2) refusing to submit to a required drug test, and (3) for "testing positive on a drug test, if the test was administered in a nondiscriminatory manner." MCL 421.29(1)(m). Here, there is no evidence in the record that any of the three claimants ingested, injected, inhaled or possessed marijuana on the premises of their respective employers. Furthermore, claimants' employers did not allege that claimants were under the influence of marijuana at any time during work hours. Similarly, claimants did not refuse to submit to a drug test. Thus, the first two disqualifiers under § 29(1)(m) are inapplicable in the present case.

With respect to the third disqualifier, the MCAC determined that claimants were disqualified under that provision because they failed a drug test. However, although claimants failed their respective drug tests and ordinarily would have been disqualified for unemployment benefits under § 29(1)(m), we must determine whether claimants were nevertheless entitled to unemployment benefits pursuant to the MMMA's immunity and preemption provisions.[5]

As noted above, the MMMA's immunity clause provides in relevant part as follows:

A qualifying patient who has been issued and possesses a registry identification card *shall not be subject to* arrest, prosecution, or *penalty in any manner, or denied any right or privilege*, including but not limited to *civil penalty or disciplinary action* by a business or occupational or professional licensing

---

[5] Claimants present several arguments concerning the results of the drug tests. Braska argues that the MCAC erred in admitted the results verification record and the specimen result certificate. Braska and Kemp argue that individuals are not disqualified under § 29(1)(m) simply for testing positive on a drug test. According to them, based on the definition of a "drug test," an individual is only disqualified if the positive drug test was the result of the "illegal use" of a drug. Finally, Kudzia argues that he only tested positive for marijuana "metabolites" and the circuit court stated that Kemp tested positive for 11-carboxy-THC without discussing the impact of that statement. We need not address the merits of each of these arguments. As discussed above, even assuming that claimants tested positive for marijuana and results of those tests were properly admitted during the administrative proceedings, because there was no evidence that the positive drug tests were a result of anything other than the medical use of marijuana in accord with the terms of the MMMA, denial of the unemployment benefits constituted a penalty that ran afoul of the MMMA's immunity clause. Therefore, claimants' arguments are moot.

-10-

board or bureau, for the medical use of marijuana in accordance with this act. . . . [MCL 333.26424(a)(emphasis added).]

The immunity provided under this section is broad. It prohibits the imposition of certain consequences upon individuals who use medical marijuana in accordance with the MMMA. See *1031 Lapeer LLC v Rice*, 290 Mich App 225, 231; 810 NW2d 293 (2010) (use of the phrase "shall not" designates a mandatory prohibition). Specifically, the statute provides that qualifying patients "shall not" (1) be subject to arrest, prosecution, or "penalty in any manner" or (2) be denied any "right" or "privilege," "*including but not limited to* civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau. . . ." (Emphasis added).

In this case, none of the parties contend that claimants used medical marijuana in a manner that did not comply with the terms of the MMMA. Therefore, we must determine if denial of unemployment benefits either constitutes imposition of a penalty or denial of a right or privilege.

The MMMA does not define the term "penalty." In *Ter Beek*, 495 Mich at 20, in the context of the MMMA, our Supreme Court referred to a dictionary to define the term to mean "'a punishment imposed or incurred for a violation of law or rule . . . something forfeited. . . .'" *Id.*, quoting *Random House Webster's College Dictionary* (2000). Further, because the term "penalty" in MCL 333.26424(a) is modified by the phrase "in any manner," the immunity granted by the MMMA from penalties "is to be given the broadest application" and applies to both civil and criminal penalties. *Ter Beek v Wyoming*, 297 Mich App 446, 455; 823 NW2d 864 (2012).

Applying this definition to the present case, we conclude that denial of unemployment benefits under § 29(1)(m) constitutes a "penalty" under the MMMA that was imposed upon claimants for their medical use of marijuana. Here, as discussed above, none of the parties disputes that claimants met the threshold requirements for unemployment benefits under MCL 421.28. The only reason claimants were disqualified by the MCAC from receiving benefits was because they tested positive for marijuana. In other words, absent their medical use of marijuana—and there was no evidence that claimants, all of whom possessed a medical marihuana card, failed to abide by the MMMA's provisions in their use—claimants would not have been disqualified under § 29(1)(m). Thus, because claimants used medical marijuana, they were required to forfeit their unemployment benefits. For this reason, the decision by the MCAC to deny claimants unemployment benefits amounted to a penalty imposed for the medical use of marijuana contrary to MCL 333.26424(1). Accordingly, because the MMMA preempts the MESA, the MCAC erred in denying claimants unemployment benefits. See MCL 333.26427(e) ("[a]ll other acts and parts of acts inconsistent with [the MMMA] do not apply to the medical use of marijuana as provided for by this act.").

The Department argues that disqualification under § 29(1)(m) is not a "penalty." According to the Department, something cannot be forfeited unless one was entitled to it, and claimants were not entitled to unemployment benefits because the MESA conditions the payment of benefits upon an individual's eligibility and qualification. We reject the Department's argument that, because claimants were disqualified under § 29(1)(m), they were not penalized.

-11-

This argument ignores the salient fact that claimants met the threshold requirements for unemployment benefits and were disqualified only because of their use of medical marijuana.

In addition, the Department claims that, to the extent denial of unemployment benefits constituted a penalty, the penalty was imposed not for the medical use of marijuana, but rather for failing a drug test. Essentially, the Department contends that we should distinguish the act of failing a drug test from claimants' medical use of marijuana. We decline the Department's invitation to ignore the basis for the positive drug tests and engage in linguistic gymnastics in an attempt to avoid the plain language of the MMMA. Claimants' use of medical marijuana and their subsequent positive drug tests are inextricably intertwined. Each claimant tested positive for marijuana. There was no dispute that each claimant possessed a medical marihuana card. No evidence was presented to suggest that the marijuana discovered in the drug tests was not from the medical use of marijuana or that claimants failed to use medical marijuana in accordance with the provisions of the MMMA. Stated simply, claimants would not have failed the drug test had they not used medical marijuana. The plain language of the MMMA's immunity clause states that claimants "*shall not*" suffer a penalty for their medical use of marijuana. In construing unambiguous language such as this, we will give the statutory words their plain meaning. See *Scalise v Boy Scouts of America*, 265 Mich App 1, 26; 692 NW2d 858 (2005) ("When construing a statute, where the language is unambiguous, this Court gives the words their plain meaning."). Here, but for claimants' use of medical marijuana, the MCAC would not have disqualified them for unemployment benefits. The disqualification clearly amounted to a penalty imposed upon claimants for their medical use of marijuana that ran afoul of the MMMA's immunity clause. Because the MMMA preempts the MESA, the MCAC erred in concluding that claimants were disqualified for unemployment benefits.[6]

The Department also argues if we were to hold that the MMMA protects against the denial of unemployment benefits, we would disregard the MMMA's provision that employers are not required to accommodate the use of medical marijuana in the workplace. However, the Department reads the relevant provision of the MMMA, MCL 333.26427(c)(2), too broadly. The provision does not direct that an employer is not required to accommodate the "*medical use*" of marijuana, which includes internal possession, MCL 333.26423(f). Rather, it directs that nothing in the MMMA shall be construed to require "[a]n employer to accommodate the ingestion of marijuana *in any workplace* or any employee *working while under the influence* of marijuana." MCL 333.26427(c)(2) (emphasis added). There was no evidence that claimants ingested marijuana in the workplace or that they worked under the influence of marijuana. Thus, the Department's argument with respect to MCL 333.26427(c)(2) is misplaced.

In a related argument, the Department contends that awarding unemployment benefits in this case amounts to a penalty imposed upon the employers because the employers ultimately will be required to pay increased contributions to the unemployment compensation fund.

---

[6] Because we conclude that the denial of unemployment benefits constituted a "penalty," we need not address whether unemployment benefits constitute a "right" or a "privilege" for purposes of the MMMA.

However, to the extent that applying the plain language of the MMMA results in employers being responsible for paying unemployment benefits, that is a matter of public policy. Our authority does not extend to setting public policy for the state. *Houston v Governor*, 491 Mich 876, 877; 810 NW2d 255 (2012). Rather, our concern is the plain language of the statute, which is the best indicator of the intent of the electorate in approving the medical marijuana initiative. *McQueen*, 493 Mich at 147. Here, as discussed above, the denial of unemployment benefits conflicts with the plain language of the MMMA's immunity clause.

The Department cites *Casias v Wal-Mart Stores, Inc*, 695 F 3d 428 (CA 6, 2012), and *Beinor v Ind Claim Appeals Office of Colorado & Service Group, Inc*, 262 P 3d 970 (Colo App, 2011), to further support its argument that the MMMA does not apply to private employers. The Department's reliance on these cases is unpersuasive.

In *Casias*, the Sixth Circuit Court of Appeals held that the MMMA's immunity clause did not apply to a private employer's decision to fire an employee for using medical marijuana, reasoning that the MMMA does not impose restrictions on private employers. *Id.* at 435. The *Casias* decision is not binding precedent on this Court. See *Mettler Walloon, LLC, v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293 (2008) (noting that, "[o]n questions of state law, Michigan courts are not bound by foreign authority. . ."). Moreover, unlike in *Casias*, in this case, we are not presented with the issue of whether the MMMA's immunity clause applies in cases involving action solely by private employers.[7] The issue raised in this case is not whether the employers violated the MMMA because they terminated claimants. The issue is whether, in denying unemployment benefits, the MCAC—a state actor—imposed a penalty upon claimants that ran afoul of the MMMA's broad immunity clause. When an individual is denied unemployment benefits, the employer's conduct is not at issue, but rather, the denial involves state action. See *Vander Laan v Mulder*, 178 Mich App 172, 176; 443 NW2d 491 (1989).

Similarly, *Beinor*, 262 P 3d at 975, is neither binding precedent on this Court, *Mettler Walloon*, 281 Mich App at 221 n 6, nor is it persuasive. In *Beinor*, 262 P 3d at 975, the Colorado Court of Appeals held that the plaintiff, a medical marijuana user, was not entitled to

---

[7] In addressing whether the MMMA's immunity clause applied to private employers, the Sixth Circuit interpreted the phrase "*including but not limited to* civil penalty or disciplinary action *by a business or occupational or professional licensing board or bureau*. . . " to be limited in scope to state actors—i.e. business, occupational, or professional licensing boards or bureaus. See *Casias*, 695 F 3d at 436. Notably, the Sixth Circuit did not discuss in any detail the impact of the phrase "*included but not limited to*" in determining that the MMMA was limited to business, occupational, or professional licensing boards or bureaus. See *id*. at 435-437. However, as noted above, in this case we are not tasked with deciding whether the MMMA applies in situations involving solely a private actor where denial of unemployment benefits involves action by the MCAC, a state actor. See *Vander Laan v Mulder*, 178 Mich App 176; 443 NW2d 491 (1989) (noting that when an individual is denied unemployment benefits, the employer's conduct is not at issue).

unemployment benefits after he was terminated for failing a drug test. The court reasoned that the plaintiff was not entitled to immunity under Colorado's medical marihuana act. *Id*. at 975-976. The reasoning in *Beinor* is not persuasive for purposes of these cases. The state constitutional provision at issue in that case only protected medical marijuana users from "criminal laws," *id*. at 975, whereas the MMMA's immunity clause is much broader, extending to both criminal and civil penalties. See *Ter Beek*, 495 Mich at 20-21. Therefore, we do not find *Beinor* helpful to our analysis in these cases.

Finally, the Department argues that, even if the MMMA prevents claimants from being disqualified from receiving unemployment benefits under § 29(1)(m), they are still disqualified from receiving benefits under § 29(1)(b) of the MESA. Under that provision, an individual is disqualified from receiving benefits if he or she was discharged for misconduct connected with the individual's work. MCL 421.29(1)(b). According to the Department, each claimant engaged in misconduct because he or she acted in direct and knowing contravention of the employer's zero-tolerance drug policy.

Contrary to the Department's argument, § 29(1)(b) is not applicable in the present cases. "[I]t is a settled rule of statutory construction that where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls." *In re Haley*, 476 Mich 180, 198; 720 NW2d 246 (2006). In these cases, the MCAC found that each claimant was discharged for testing positive on a drug test. Other than testing positive for marijuana, there was no misconduct that led to any claimant being discharged. MCL 421.29 contains a specific provision regarding disqualification when an individual tests positive on a drug test. Accordingly, based on the settled rule of statutory interpretation as set forth in *In re Haley*, claimants' disqualification from receiving unemployment benefits is governed by § 29(1)(m), the specific provision concerning testing positive on a drug test, rather than § 29(1)(b), a related, but more general, provision regarding misconduct.

In addition, even if § 29(1)(b) was applicable and the MCAC disqualified claimants from receiving unemployment benefits because they were discharged for misconduct, this would not impact our analysis with respect to the plain language of the MMMA's immunity clause. Each claimant's misconduct involved testing positive for marijuana on a drug test, which was a violation of his or her employer's zero-tolerance drug policy. However, the only reason that claimants tested positive on the drug tests was that they used medical marijuana. Absent their use of medical marijuana, claimants would not have been disqualified from receiving unemployment benefits. Thus, the denial of benefits as a result of disqualification under § 29(1)(b), like disqualification under § 29(1)(m), results in a "penalty in any manner" for the medical use of marijuana contrary to MCL 333.26424(a).

## IV. CONCLUSION

Claimants tested positive for marijuana and would ordinarily be disqualified for unemployment benefits under the MESA, MCL 421.29(1)(m); however, because there was no evidence to suggest that the positive drug tests were caused by anything other than claimants' use of medical marijuana in accordance with the terms of the MMMA, the denial of the benefits constituted an improper penalty for the medical use of marijuana under the MMMA, MCL 333.26424(a). Because the MMMA preempts the MESA, the circuit courts did not err in

-14-

reversing the MCAC's rulings that claimants were not entitled to unemployment compensation benefits.[8]

Affirmed. A public question being involved, no costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[8] To the extent the circuit court in Docket No. 313932 erred and applying the incorrect standard of review, the court reached the right result albeit for the wrong reason. See *Gleason v Mich Dep't of Transportation*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.")