*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEWIS A. ZAJAC,

      Claimant-Appellee,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY, formerly known as
DEPARTMENT OF LABOR AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

      Appellant,

and

CHAMPION BUS, INC.,

      Appellee.

UNPUBLISHED
March 24, 2020

No. 345580
Lapeer Circuit Court
LC No. 2018-051853-AE

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

RONAYNE KRAUSE, P.J. (*dissenting*.)

      I respectfully dissent. I conclude that the trial court properly found that the ALJ and MCAC clearly applied a wrong legal principle. I would affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

      Much of the evidence in this matter is testimonial, and as the majority outlines, some of that testimony is consistent, whereas some of it is not. Claimant worked for Champion Bus, Inc. (Champion), from 2013 through 2017. On June 16, 2017, claimant was working as the lamination team lead, building buses for Champion. It appears that claimant had a lengthy history of being argumentative, but apparently this had never been considered cause for disciplinary warnings or action. Claimant's supervisor, Dustin Pennington, had been working for Champion for less than two weeks and had been claimant's supervisor for approximately three days. At some point during

that afternoon, Pennington directed claimant to bring an additional bus into the production area. Claimant refused, stating that the production line had become "jammed up" and that it was impossible to fulfill Pennington's request. A confrontation between the two men ensued, and—at this point—their factual accounts diverge.

According to claimant, he attempted to explain why Pennington's order was impossible to fulfill and that Pennington would need to explain to claimant how to achieve it. Claimant initially tried to walk away from Pennington, only to have Pennington follow and "cut claimant off" by getting in front of claimant and blocking claimant's path. Pennington then became angry and aggressive toward claimant. Claimant then left the situation and proceeded directly to the HR department. Two Champion employees, Michael Brown and Christopher Vyt, witnessed the confrontation at some distance. Neither of them could hear what was said between claimant and Pennington. However, they both generally confirmed claimant's, and not Pennington's, version of what physical events occurred: claimant initially walked away, Pennington followed, and then Pennington got in front of claimant. Brown believed moving the bus into the production area would have been impossible, Vyt was "not too sure about that." At HR, claimant spoke with HR assistant Robin Pape. Pape testified that claimant felt harassed by Pennington, and "then also he made some reference to next time it happens with [claimant] and him it – [claimant] may not be as nice next time, but he said he would never act on that."

Pennington testified that when he instructed claimant to bring the bus into the production area, claimant "became very upset," stated that "it was not going to happen." Claimant proceeded to advise Pennington that claimant believed Pennington ignorant of shop operations. Pennington testified that he and claimant walked side-by-side to a podium, at which point claimant turned in front of Pennington. Claimant then warned Pennington not to try to cut him off, because "that's going to piss me off and it won't be very good." Pennington felt threatened due to claimant's large size and serious demeanor. Pennington then left and also proceeded directly to the HR department. Pennington reported claimant's threat to HR manager Carolee Ehrke. Ehrke testified that "there was nothing to investigate in terms of why [claimant] refused to do the job" and that claimant had primarily been terminated due to Champion's zero-tolerance policy regarding threats. Confusingly, Ehrke admitted that claimant denied making any threats, but also testified that claimant had admitted to making a threat but that he "didn't really mean it."

While claimant was speaking with Pape, Ehrke entered the office and informed claimant he was suspended until further notice pending an investigation into his threat against Pennington. Pennington testified that bringing in the additional bus could be achieved by moving the busses into three lanes, and he successfully did so with the assistance of most of the production team on the following day. Claimant, however, emphasized in his testimony that bringing the bus in was possible as a general matter and he had done so many times previously, but it was impossible to do immediately when Pennington gave him the instruction. On June 19, 2017, Ehrke informed claimant by telephone that Champion was terminating his employment. A few days later, claimant received a termination letter, signed by Pape, stating he had been terminated for making threats and failing to follow directions.

Claimant sought benefits from the Michigan Unemployment Insurance Agency (Agency). Initially, the agency determined that claimant had not committed misconduct and was, therefore, not disqualified from receiving benefits. Champion appealed this determination and a hearing was

held before an administrative law judge (ALJ). Over the course of several days, the ALJ heard testimony by telephone regarding the circumstances concerning the termination of claimant's employment. The ALJ issued a written decision finding that claimant had threatened Pennington and failed to follow Pennington's directions. Together these actions, the ALJ concluded, constituted misconduct that disqualified claimant from receiving unemployment benefits. Claimant appealed the ALJ's decision to the MCAC. Denying claimant's request for written argument, the MCAC determined that "the ALJ's findings of fact accurately reflect the evidence introduced during the hearing. The ALJ properly applied the law to those facts. It is our opinion that the ALJ's decision should be affirmed."

Claimant next appealed the MCAC's decision to the Lapeer Circuit Court. After oral argument by claimant and the DLEO, the circuit court reversed the MCAC's decision. In its opinion, the circuit court found the ALJ erred in relying on the testimony of Pape and Ehrke in determining that claimant threatened Pennington. The circuit court also determined the ALJ and MCAC were incorrect in concluding that claimant's behavior constituted misconduct disqualifying claimant from receiving unemployment benefits. This appeal ensued.

## II. STANDARD OF REVIEW AND PROCEDURAL PRINCIPLES

Under the Michigan Employment Security Act, MCL 421.1 *et seq.*, "an individual is disqualified from receiving benefits if he or she: . . . [w]as suspended or discharged for misconduct connected with the individual's work . . ." MCL 421.29(1)(b). After a hearing before an ALJ and review by the MCAC, a party can appeal the administrative determination concerning whether he or she is disqualified from receiving unemployment benefits to the circuit court. MCL 421.38. The circuit court's task on appeal from the MCAC is two-fold: to determine (a) whether the MCAC's affirmation of the ALJ's decision was supported by "competent, material, and substantial evidence on the whole record," MCL 421.38(1), and (b) "whether the MCAC operated within the correct legal framework." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 435; 906 NW2d 482 (2017). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005) (quotation marks and citation omitted). Similarly, "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003).

The circuit court may not substitute its judgment for that of the MCAC and is required to affirm unless the ALJ and MCAC made an error of law or drew a factual conclusion unsupported by the requisite quantum of evidence. *Hodge v United States Security Ass'n*, 497 Mich 189, 193-194; 859 NW2d 683 (2015); *Boyd v Civil Serv Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996). Although the MCAC's factual findings are entitled to great deference, they are only conclusive if "any competent evidence" supports those findings. *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008). The factual deference owed to the MCAC and to the ALJ is not absolute, and the trial court is not a mere "rubber stamp" capable of nothing more than the illusion of review. See *In re CW*, unpublished opinion per curiam of the Court of Appeals, issued February 16, 2010, (Docket No. 292866) slip op at dissent p 3 (SHAPIRO, J, dissenting), cited as

the basis for reversing by our Supreme Court 488 Mich 935, 935-936; 790 NW2d 383 (2010).[1] It stands to reason that the MCAC's decision cannot be reviewed without also undertaking some degree of review of the ALJ's decision. If the circuit court has *no* "latitude and discretion" to substantively consider the ALJ's factual determinations, then there is really no point to judicial review at all. See *Greene v Greene*, 357 Mich 196, 205; 98 NW2d 519 (1959).

We effectively review the circuit court's review of an administrative determination for clear error. See *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014). Under this standard, "the circuit court's legal conclusions are reviewed de novo and its factual findings are reviewed for clear error." *Id*. at 352 (citation omitted). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *VanZandt*, 266 Mich App at 585. Under the clear error standard, we will affirm if the trial court's determination "is plausible in light of the record viewed in its entirety." *Beason v Beason*, 435 Mich 791, 803; 460 NW2d 207 (1990).

## III. ANALYSIS

The DLEO asserts that the circuit court misapplied the standard of review when reviewing the MCAC's decision and impermissibly replaced the findings of fact made by the ALJ, and affirmed by the MCAC, with its own reasoning. I disagree.

It is not disputed that claimant was terminated on the basis of misconduct. "Misconduct," as the term is used in MCL 421.29(1)(b),

> is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. [*Carter v Mich Employment Security Comm*, 364 Mich 538, 541; 111 NW2d 817 (1961) (quotation omitted); see also *Hodge*, 497 Mich at 192 n 1.]

The alleged misconduct in this matter consists of claimant refusing to carry out a "reasonable" order followed by making a clear threat, which does necessarily constitute misconduct. *Carter*,

---

[1] Peremptory orders from our Supreme Court are binding, even if they can only be understood by reference to other opinions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018). Although *In re CW* involved review under the "arbitrary and capricious" standard, I understand it to stand for the principle that review of administrative agency decisions necessarily includes some amount of actual review.

364 Mich at 541-542.  Importantly, the burden of proving misconduct is on the employer.  *Fresta v Miller*, 7 Mich App 58, 63-64; 151 NW2d 181 (1967).

As an initial matter, the testimony strongly suggested that the primary basis for claimant's termination was the threat.  The ALJ was certainly empowered to choose to believe Pennington over claimant and the two disinterested eyewitnesses regarding the actual events that transpired.  However, claimant's termination for making a threat was based on Ehrke's belief that claimant violated Champion's zero-tolerance policy.  Even accepting the truth of that belief at face value, which the ALJ may do, it is legal error to conclude that claimant committed misconduct on that basis alone.  Because certain conduct might be defined as a "threat" by a company's zero-tolerance policy, it does not *necessarily* make it misconduct within the meaning of MCL 421.29(1)(b).[2]  See *Hagenbuch v Plainwell Paper Co, Inc*, 153 Mich App 834, 837-838; 396 NW2d 556 (1986); *Broyles v Aeroquip Corp*, 176 Mich App 175, 178-180; 438 NW2d 888 (1989).  Furthermore, I believe the trial court was correct to observe that just because a statement is perceived as a threat does not necessarily prove that it was intended as a threat and was made willfully or recklessly.  *Carter* clearly calls for an analysis of the employee's conduct from the employee's perspective, not how that conduct is interpreted by others.  It follows that merely because an employee breaks their employer's rule, that does not conclusively establish that the employee disregarded the employer's interests willfully and wantonly.

Furthermore, refusal to carry out an impossible task cannot be misconduct.  Furthermore, the statutory definition of misconduct necessarily implies bad faith.  The ALJ observed that Pennington was eventually able to get the bus into the production area.  However, under the particular circumstances of this case, that does not tend to show that Pennington's order was not impossible.  The evidence uniformly established that claimant consistently maintained that bringing in the bus was impossible *at the time*, an opinion supported by one of the disinterested witnesses.  What the ALJ failed to recognize was that the movement of the bus was accomplished the next day, *not* on the date in question, after significant rearrangement of the busses had taken place.  Furthermore, even if claimant was mistaken, if he genuinely believed Pennington had given him an impossible order, his refusal to carry out that order could not be "misconduct."  There is simply *no* evidence, not even a scintilla, tending to show that claimant was incorrect at the time.  Because the burden of proof is on the employer, the ALJ and MCAC unambiguously applied a wrong legal principle in finding that claimant committed misconduct by refusing to bring in the bus as ordered.

I do not find that the trial court improperly substituted its judgment for that of the ALJ and MCAC.  The trial court accepted the facts as found by the ALJ to the extent those facts had any actual evidentiary support.  Rather, the trial court properly found that the ALJ and MCAC clearly applied a wrong legal principle by effectively placing the burden of *dis*proving misconduct on claimant, presuming that a rule violation constituted misconduct *per se*, and totally failing to consider the significance of impossibility at the moment versus impossibility at some other time.

---

[2] Zero-tolerance policies might be warranted for any number of reasons, but they definitionally exclude any consideration of context.  Therefore, they are of little relevance to the context-based inquiry necessary to determine whether a particular action constitutes misconduct.

The trial court appropriately did not attempt to substitute its judgment for that of the ALJ and MCAC, and it instead remanded for further consideration of the facts on the basis of a corrected apprehension of the applicable legal principles.  I would affirm.

/s/ Amy Ronayne Krause