*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA EPLEE,

Plaintiff-Appellant,

UNPUBLISHED
February 19, 2019

v

CITY OF LANSING, and LANSING BOARD OF
WATER AND LIGHT,

Defendants-Appellees.

No. 342404
Ingham Circuit Court
LC No. 17-000823-CL

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

This case involves allegations that defendants violated § 4[1] of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., by rescinding a conditional offer of employment extended to plaintiff. Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and (8). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This action arises out of a conditional offer of employment that defendant Lansing Board of Water and Light (BWL) extended to plaintiff and the subsequent decision to rescind that offer after plaintiff tested positive for tetrahydrocannabinol (THC) during a drug screen that was part of the hiring process. Plaintiff's claims against defendants essentially revolve around the following statutory language contained in MCL 333.26424(a):

> A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or

---

[1] MCL 333.26424.

disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . . .

According to plaintiff's complaint, she was a qualifying patient under the MMMA with a valid registry identification card when she was interviewed on April 28, 2017, by the BWL for a full-time position. On May 1, 2017, the BWL made plaintiff a conditional offer of employment, which included as a condition that plaintiff comply with the BWL's drug testing policies. On May 2, 2017, plaintiff submitted to a drug screen in accordance with these policies. She also immediately informed David Douglas, a BWL supervisor and her contact person during the hiring process, that she was a registered qualifying patient under the MMMA. Plaintiff was informed on May 7, 2017, that the results of her drug screen were positive for THC and negative for any other controlled substances. According to the complaint, Douglas received plaintiff's drug screen results on May 8, 2017, and "began discussion with the 'BWL team' on potentially adjusting their drug testing policy to hire [plaintiff]." On May 10, 2017, plaintiff emailed documentation of her status as a registered qualifying patient to Douglas. Two days later, Douglas informed plaintiff that she would not be hired at the BWL. Finally, on May 19, 2017, the BWL sent plaintiff a letter "rescinding her offer of employment without explanation."

Subsequently, after plaintiff's counsel sent Douglas a letter stating that plaintiff's employment offer could not be rescinded solely on the basis of her status as a registered qualifying patient, counsel for the BWL sent a letter to plaintiff's counsel indicating that plaintiff's employment offer would not be reinstated due to "the needs of the department" and further denying that plaintiff's offer was rescinded based on her status as a registered qualifying patient. Nonetheless, plaintiff alleged in her complaint that "Defendants rescinded [plaintiff's] offer because she tested positive for THC in violation of the Michigan Medical Marihuana Act."

On November 13, 2017, plaintiff filed a two-count complaint against the City of Lansing and the BWL for violation of the MMMA and breach of contract.

In her complaint, plaintiff asserted that at all relevant times she was a registered qualifying patient in full compliance with the MMMA and that defendants constituted a "business or occupational or professional licensing board or bureau" that was prohibited from denying plaintiff any right or privilege, including civil penalty or disciplinary action, based on her medial use of marijuana.[2] Plaintiff further alleged that defendants had "no legitimate business reason" to rescind her conditional offer of employment and that the conditional offer was rescinded solely because of her status as a registered qualifying patient, thereby, according to plaintiff, in violation of the afore-cited section of the MMMA.

Regarding plaintiff's breach-of-contract claim, plaintiff alleged that she accepted defendants' conditional offer of employment and that defendants agreed to employ her in exchange for her "satisfaction of the conditional offer of employment." Plaintiff further alleged

---

[2] We will use the more common spelling, "marijuana," throughout this opinion, despite the spelling used in the MMMA. See *Braska v Challenge Mfg Co*, 307 Mich App 340, 343 n 1; 861 NW2d 289 (2014).

that she satisfied all conditions of the offer and that defendants breached the contract by illegally rescinding the conditional offer, referring we suspect, to defendant's alleged violation of the MMMA in rescinding her conditional offer of employment.

In lieu of an answer, defendants moved for summary disposition under MCR 2.116(C)(7) and (8), arguing that plaintiff had failed to state a claim on which relief could be granted. Defendants first argued that summary disposition should be granted in their favor on plaintiff's MMMA claim for three reasons: defendants contended (1) that the claim was barred by governmental immunity since both defendants are political subdivisions of the state that are immune from tort liability and none of the exceptions to immunity were applicable; (2) that the MMMA does not create a private cause of action authorizing suit for alleged violations of the act; and (3) that the MMMA does not prohibit employers from maintaining zero-tolerance drug policies for their applicants and employees. Additionally, defendants argued that they were entitled to summary disposition on plaintiff's breach-of-contract claim because such a claim could not be premised on the loss of at-will employment. Defendants also maintained that in the alternative, plaintiff's complaint demonstrated that defendants never breached the conditional offer because plaintiff failed to satisfy the conditions of the offer: the offer was conditioned on the acceptable results of plaintiff's drug screen and her positive test for THC constituted a drug screen result that was not acceptable. Finally, defendants contended that the City was not a proper party to the lawsuit because it was not plaintiff's prospective employer or the entity that decided to withdraw the conditional offer of employment.

Plaintiff filed a response to the motion. First, plaintiff argued that her claim was not barred by governmental immunity because defendants were performing a proprietary function rather than a governmental function. Among other arguments, plaintiff maintained that defendants provided utilities to residents for the purpose of pecuniary profit. However, plaintiff contended that there was "simply not enough information at this time in the case" for the court to rule whether the BWL was engaged in a governmental or proprietary function because it was unclear without discovery whether the BWL was actually supported by taxes and fees.

Plaintiff also argued that governmental immunity did not apply because violating the MMMA is not a governmental function. Plaintiff further argued that even if the MMMA did not prevent private employers from disciplining employees for marijuana use, this rule did not apply to defendants as *public* entity employers. Plaintiff argued that defendants were "business bureaus" under MCL 333.26424(a) and that defendants penalized plaintiff by denying her the privilege of employment, which had been granted through the conditional offer. According to plaintiff, the MMMA was intended to prohibit any penalty associated with the use or cultivation of marijuana in the context of public employment[3] Plaintiff additionally argued that if the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, prohibited suit against

---

[3] Here it appears plaintiff is arguing that defendants were the types of entities that were prohibited by MCL 333.26424(a) from denying any right or privilege to qualifying patients and that governmental immunity therefore did not protect defendants from suit.

defendants, then it was in conflict with and superseded by the MMMA because the MMMA does not allow zero-tolerance marijuana policies in public employment settings.

Plaintiff finally made two additional cursory and conclusory arguments. First, plaintiff argued that she sufficiently pleaded her breach-of-contract claim because she had satisfied all conditions of the offer and defendants "illegally" rescinded it. Next, plaintiff argued that the City was a proper party because members of the BWL are officers of the City under the Lansing City Charter.

A hearing was held on the motion. After hearing oral arguments consistent with the parties' respective written filings, the trial court granted summary disposition in favor of defendants. The trial court reasoned that both defendants were "immune from any type of lawsuit like this," that the conditional offer of employment did not constitute a contract of employment because it could be withdrawn at any time, and that it was an offer for a "job that has no job security whatsoever."

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision granting summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether governmental immunity applies is a question of law that this Court reviews de novo on appeal. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004). Issues of statutory interpretation are also reviewed de novo. *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

"Under MCR 2.116(C)(7), summary disposition is appropriate when a claim is barred by governmental immunity." *Id*. at 376-377. A motion under MCR 2.116(C)(7) may be supported by documentary evidence, but filing supportive material is not required. *Maiden*, 461 Mich at 119. "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. "A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 494 Mich at 377.

A motion made pursuant to MCR 2.116(C)(8) "tests the legal sufficiency of the complaint," and a court only considers the pleadings. *Maiden*, 461 Mich at 119-120. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id*. at 119. Summary disposition is proper under MCR 2.116(C)(8) "where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

At the center of this dispute is plaintiff's argument that the BWL was prohibited by § 4(a) of the MMMA from rescinding plaintiff's conditional offer of employment after plaintiff tested positive for THC due to her use of medical marijuana. This argument formed the underlying basis for both plaintiff's MMMA-violation claim and her breach-of-contract claim. The trial court, in granting defendants' motion for summary disposition, concluded that the action was

barred by governmental immunity and that there was no enforceable contractual right to employment since the offer could be "withdrawn at any time."

We begin our analysis by considering the application of governmental immunity. In doing so, we must necessarily consider the precise nature of plaintiff's underlying argument in order to determine whether governmental immunity applies and whether plaintiff has even stated a cognizable claim in the first instance.

Section 7 of the GTLA provides that "[e]xcept as otherwise provided in this act, a governmental agency is immune from *tort liability* if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1) (emphasis added). The immunity granted by the GTLA applies "unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Because governmental immunity is a "characteristic of government," a plaintiff must plead in avoidance of governmental immunity when suing a unit of government. *Id*. at 212.

However, if a lawsuit against a governmental agency does not seek to impose "tort liability," then the GTLA does not apply. Our Supreme Court has held "that 'tort liability' as used in MCL 691.1407(1) of the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages." *In re Bradley Estate*, 494 Mich at 371. Accordingly, "the GTLA does not bar a properly pleaded contract claim." *Id*. at 387. This is so because "[i]f the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable." *Id*. at 389.[4] Furthermore, the mere fact that the same underlying facts could also establish a tort cause of action does not bar recovery for a plaintiff who successfully pleads and establishes a non-tort claim. *Id*. at 386. In addition, even if the wrong is premised on the breach of a legal duty other than a contractual one, the action still might not be seeking to impose tort liability if the remedy sought is declaratory or injunctive relief, rather than compensatory damages; in such a situation, governmental immunity would not be applicable. *Id*. at 389 & n 54. As pertinent here, our Supreme Court has explained as follows:

> [S]everal principles . . . will guide courts charged with the task of determining whether a cause of action imposes tort liability for purposes of the GTLA. Courts considering whether a claim involves tort liability should first focus on the nature of the duty that gives rise to the claim. If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable. However, if the wrong is not premised on a breach of a contractual duty, but rather is premised on some other civil wrong, i.e., some other breach of a legal duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an

---

[4] Notably, a plaintiff's damages in such a situation would obviously be limited to contract damages. *In re Bradley Estate*, 494 Mich at 389 n 53.

injury caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable. [*Id*. at 388-389.]

Furthermore, a plaintiff may not maintain a private cause of action for money damages against a governmental entity premised on the violation of a statute if that statute does not provide for such a cause of action because the GTLA provides immunity from tort liability "unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Lash v Traverse City*, 479 Mich 180, 194-195, 197; 735 NW2d 628 (2007) (quotation marks and citation omitted). "Without express legislative authorization, a cause of action cannot be created in contravention of the broad scope of governmental immunity . . . ." *Id*. at 194 (quotation marks and citation omitted; ellipsis in original).

In this case, turning first to plaintiff's MMMA-violation claim, it is not clear as an initial matter that this claim sought only to impose "tort liability" on defendants. This claim was premised on plaintiff's allegation that defendants breached their statutory duty under the MMMA to refrain from subjecting her to any penalty or the denial of a right or privilege based on her medical use of marijuana. "[W]hen a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort." *In re Bradley Estate*, 494 Mich at 384. An allegation that a governmental agency violated a statutory duty may constitute an attempt to impose tort liability for purposes of the GTLA. *Id*. at 391, 393-394. However, tort liability for purposes of the GTLA encompasses claims of noncontractual civil wrongs seeking compensatory damages, not those seeking declaratory or injunctive relief. *Id*. at 389 & n 54.

Although plaintiff's allegation in the instant case that defendants violated the MMMA constitutes an allegation of a noncontractual civil wrong, plaintiff's complaint is less than precise in describing the nature of the relief sought. Plaintiff's complaint requests damages, as well as declaratory, injunctive, and equitable relief without explanation or elaboration. Thus, to the extent that plaintiff sought declaratory, injunctive, or equitable relief, the GTLA is inapplicable to her claim that defendants violated the MMMA because plaintiff did not seek to impose "tort liability" for purposes of the GTLA. *Id*. at 389 n 54; see also *Lash*, 479 Mich at 195-196 (noting that a statute could be enforced against a governmental agency through an action seeking injunctive or declaratory relief, even if the Legislature did not provide for a private cause of action for monetary damages against a governmental agency for alleged violations of the statute).

Nevertheless, the dispositive issue in this case with respect to plaintiff's MMMA-violation claim is whether § 4(a) of the MMMA even provides plaintiff with a cause of action under the circumstances of this case. This analysis involves issues of statutory interpretation. When construing a statute, this Court considers the plain language of the statute and enforces clear and unambiguous language as written. *In re Bradley Estate*, 494 Mich at 377. If the language of the statute is clear and unambiguous, then the statute must be enforced as written and judicial construction is not required or permitted. *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014). "Regarding voter-initiated statutes such as the MMMA, the intent of the electors governs the interpretation of the statute" and "[t]he statute's plain language is the most reliable evidence of the electors' intent." *Id*.

As previously noted, at the core of the dispute in this case is plaintiff's contention that because she tested positive for THC as a result of her use of medical marijuana, the BWL was absolutely prohibited from rescinding her conditional offer of employment. In making this argument, plaintiff argues that she has an independent, free-floating right to be free of violations of § 4(a) of the MMMA and that her status as a registered qualifying patient under the MMMA protects her from any adverse employment consequences once the employer becomes aware of her medical marijuana use.[5]

Again, MCL 333.26424(a) provides in pertinent part as follows:

A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . . . [MCL 333.26424(a).]

The above-cited is an *immunity* provision; it does not create affirmative rights. "Section 4(a) of the MMMA grants a 'qualifying patient who has been issued and possesses a registry identification card' *immunity from* arrest, prosecution, or penalty 'for the medical use of marihuana in accordance with this act . . . .' " *Michigan v McQueen*, 493 Mich 135, 153; 828 NW2d 644 (2013) (emphasis added; ellipsis in original), quoting MCL 333.26424(a). However, "the MMMA does not provide carte blanche to registered patients in their use of marijuana." *People v Koon*, 494 Mich 1, 6; 832 NW2d 724 (2013); see also *id.* at 5-9 (explaining that the MMMA operated to "shield[] registered patients from prosecution" when such prosecution was based on a patient's medical use of marijuana, so long as that patient was in compliance with the MMMA). This Court has noted that the MMMA's immunity is conditioned on the use of marijuana being in accordance with the provisions of the MMMA and that "to the extent another law would penalize an individual for using medical marijuana in accordance with the MMMA, that law is superseded by the MMMA." *Braska*, 307 Mich App at 355.

Plaintiff asserts that our decision in *Braska* supports her arguments. In *Braska*, this Court addressed the issue "whether an employee who possesses a registration identification card under the Michigan Medical Marihuana Act (MMMA) MCL 333.26421 *et seq.*, is disqualified from receiving unemployment benefits under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, after the employee has been fired for failing to pass a drug test as a result of marijuana use." *Braska*, 307 Mich App at 343. The *Braska* Court held that although the

---

[5] Plaintiff appears to presume that because the adverse employment action occurred after the BWL became aware of her medical use of marijuana, her medical marijuana use *must* have been the cause of the BWL's action. Assuming without deciding that plaintiff is correct, this particular issue is irrelevant to the analysis: as will be explained below, resolution of this appeal turns on whether plaintiff had any legal right or interest in a position with the BWL in the first instance because § 4(a) of the MMMA does not prevent her from losing that which she never was entitled to have in the first place.

claimants who tested positive for marijuana would have ordinarily been disqualified from receiving unemployment benefits under MESA because of their positive drug tests, the denial of unemployment benefits "constituted an improper penalty for the medical use of marijuana under the MMMA" where there was no evidence that the positive drug tests were the result of anything but the use of medical marijuana in compliance with the MMMA. *Id*. at 356-357, 365.

In reaching this holding the *Braska* Court explained that resolution of the issue required a three-step analysis: "we must first determine (1) whether claimants met the threshold requirements for unemployment compensation under MESA, (2) whether claimants were nevertheless disqualified from receiving benefits under one of MESA's disqualification provisions, and (3), to the extent claimants were disqualified for testing positive for marijuana, whether the MMMA nevertheless provides immunity and supersedes MESA in this respect." *Id*. at 356. With respect to the first two steps, the Court determined that there was no dispute that the claimants met the threshold requirements for unemployment benefits and that they ordinarily would have been disqualified under § 29(1)(m) of MESA from receiving benefits due to their drug test results. *Id*. 356-357.

Next, the *Braska* Court addressed the immunity provision in § 4(a) of the MMMA, stating that "none of the parties contends that claimants used medical marijuana in a manner that did not comply with the terms of the MMMA. Therefore, we must determine whether denial of unemployment benefits constitutes either imposition of a penalty or denial of a right or privilege." *Id*. at 358. This Court concluded that for purposes of the MMMA, the denial of unemployment benefits constituted a "penalty" based on the medical use of marijuana; explaining:

> The MMMA does not define the term "penalty." In [*Ter Beek v Wyoming*, 495 Mich 1, 20; 846 NW2d 531 (2014)], in the context of the MMMA, our Supreme Court referred to a dictionary to define the term to mean "a 'punishment imposed or incurred for a violation of law or rule . . . something forfeited.' " *Id*., quoting Random House Webster's College Dictionary (2000). Further, because the term "penalty" in MCL 333.26424(a) is modified by the phrase "in any manner," the immunity granted by the MMMA from penalties "is to be given the broadest application" and applies to both civil and criminal penalties. *Ter Beek v Wyoming*, 297 Mich App 446, 455; 823 NW2d 864 (2012), aff'd 495 Mich 1 (2014).
>
> Applying this definition to the present case, we conclude that denial of unemployment benefits under § 29(1)(m) [of MESA] constitutes a "penalty" under the MMMA that was imposed upon claimants for their medical use of marijuana. As discussed earlier, none of the parties disputes that claimants met the threshold requirements for unemployment benefits under MCL 421.28. The only reason claimants were disqualified by the MCAC from receiving benefits was because they tested positive for marijuana. In other words, absent their medical use of marijuana—and there was no evidence that claimants, all of whom possessed a medical marijuana card, failed to abide by the MMMA's provisions in their use—claimants would not have been disqualified under § 29(1)(m). Thus, because claimants used medical marijuana, they were required to forfeit their

-8-

unemployment benefits. For this reason, the decision by the MCAC to deny claimants unemployment benefits amounted to a penalty imposed for the medical use of marijuana contrary to MCL 333.26424(a). Accordingly, because the MMMA supersedes MESA in this respect, the MCAC erred by denying claimants unemployment benefits. See MCL 333.26427(e) ("All other acts and parts of acts inconsistent with [the MMMA] do not apply to the medical use of marihuana as provided for by this act.").

The Department argues that disqualification under § 29(1)(m) is not a "penalty." According to the Department, something cannot be forfeited unless one was entitled to it, and claimants were not entitled to unemployment benefits because MESA conditions the payment of benefits upon an individual's eligibility and qualification. We reject the Department's argument that, because claimants were disqualified under § 29(1)(m), they were not penalized. This argument *ignores the salient fact that claimants met the threshold requirements for unemployment benefits and were disqualified only because of their use of medical marijuana.* [*Braska*, 307 Mich App at 358-359 (emphasis added; third alteration in original).]

The *Braska* Court further emphasized that "[b]ut for claimants' use of medical marijuana, the MCAC would not have disqualified them for unemployment benefits," and the "disqualification clearly amounted to a penalty imposed on claimants for their medical use of marijuana that ran afoul of the MMMA's immunity clause." *Id*. at 360.

In this case, plaintiff argues on appeal that the withdrawal of the conditional offer of employment constituted a "penalty" under § 4(a) of the MMMA.[6]

Following the three-step analysis used in *Braska*, it is evident that an individual must show some pre-existing entitlement or right or benefit that has been lost or denied—i.e., unemployment benefits under MESA in that case—before it can be said that the loss or denial of that benefit constitutes a penalty or the denial of a right or privilege under the MMMA. In other words, in *Braska*, it was not the MMMA that provided the claimants' right to unemployment benefits; the claimants were entitled to unemployment benefits pursuant to the terms of MESA, and the MMMA operated to prevent those benefits from being denied when the denial was based

_____

[6] Plaintiff also implies that rescinding the offer could also be considered the denial of a right or privilege for purposes of § 4(a) of the MMMA. However, plaintiff does not provide any cogent argument or legal authority to demonstrate how the BWL's conditional offer constituted a "right or privilege" to employment. Plaintiff merely asserts that she held such a right or privilege. Therefore, the issue whether employment could ever constitute a "right" or "privilege" for purposes of the MMMA is abandoned. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).

on the medical use of marijuana in compliance with the MMMA. Under those circumstances, such a denial constituted an improper penalty.

In the instant case, however, plaintiff cannot point to any legal right that she had to be employed by the BWL. "Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v Malady (On Rehearing)*, 458 Mich 153, 163; 579 NW2d 906 (1998) (opinion by WEAVER, J.); accord *id*. at 186 (MALLETT, C.J., concurring in part and dissenting in part). Such at-will employment relationships may be terminated "for any reason or no reason at all." *Rood v Gen Dynamics Corp*, 444 Mich 107, 116; 507 NW2d 591 (1993). However, the presumption of at-will employment may be sufficiently rebutted to impose limitations on an employer's right to terminate employment if proof is submitted of "either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Lytle*, 458 Mich at 164 (opinion by WEAVER, J.); accord *id*. at 186 (MALLETT, C.J., concurring in part and dissenting in part). Three methods for proving such contractual terms have been recognized by courts: "(1) proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee." *Id*. at 164 (opinion by WEAVER, J.) (quotation marks and citations omitted); accord *id*. at 186 (MALLETT, C.J., concurring in part and dissenting in part).

In this case, plaintiff alleged that BWL gave her a "conditional offer of employment." Plaintiff never alleged that the offered employment was not at-will, and she did not allege any facts even suggesting that the employment was not at-will. Plaintiff has not alleged that she had a contract with the BWL providing for a definite term of employment or prohibiting discharge without just cause. Accordingly, plaintiff has not rebutted the presumption that the position offered to her by the BWL was terminable at the will of the BWL. *Id*. at 163-164 (opinion by WEAVER, J.). If the BWL would have been able to terminate plaintiff's employment at any time after her employment began for any or no reason, it logically follows that the BWL could rescind its conditional offer of employment at any time and for any or no reason at all. *Id*.; *Rood*, 444 Mich at 116.

Further, plaintiff's assertions regarding defendants' status as public entities do not and cannot serve as a legal basis on which this Court could find that plaintiff had any "right" or "property interest" in employment with the BWL. "A property right emanates from a contract or statute; public employment in and of itself is not a property interest automatically entitling an employee to procedural due process." *Bracco v Mich Technological Univ*, 231 Mich App 578, 587; 588 NW2d 467 (1998) (quotation marks and citation omitted; emphasis omitted). Additionally, although a contract or statute may provide a property right, "a public employee does not have a property right in continued employment when the position is held at the will of the employee's superiors and the employee has not been promised termination only for just cause." *Id*. (quotation marks and citation omitted; emphasis omitted). In this case, as previously noted, plaintiff has not alleged that she was offered anything but at-will employment, nor has she alleged that "just cause" was necessary before the BWL could rescind its offer of employment or terminate her employment had she actually started working for the BWL.

Thus, plaintiff has failed to demonstrate that she had any right or property interest of any manner in employment with the BWL. Plaintiff has also failed to demonstrate that there was any prohibition—statutory or otherwise—on the BWL's ability to withdraw—for any or no reason at all—its conditional offer of employment.

Here, and unlike the claimants in *Braska*, where the entitlement to unemployment benefits was governed by a statutory scheme, plaintiff in the instant case has not demonstrated that she had any legal right or interest in holding employment with the BWL. Furthermore, unlike the situation in *Braska* where the claimants could demonstrate that they would have been entitled to unemployment benefits but for their medical use of marijuana, *Braska*, 307 Mich App at 358-360, plaintiff in this case cannot show that she would have certainly begun employment with the BWL *but for* her medical marijuana use because the BWL at all times retained the ability to terminate her employment, including the offer of employment, for *any reason or no reason*, regardless of plaintiff's medical use of marijuana. Plaintiff therefore cannot demonstrate that the withdrawal of the employment offer constituted a "penalty" for purposes of § 4(a) of the MMMA.

When viewed in its entirety, plaintiff's MMMA-violation claim is an attempt to use § 4(a) of the MMMA as a sword to obtain a protected right to employment rather than as the shield of protection that is the true function of § 4(a). But § 4(a) of the MMMA does not provide such a right. Notably, there is no language in this statute related to "employment." Moreover, as previously discussed, the statute does not create affirmative rights but instead provides *immunity from* penalties and the denial of rights or privileges based on the medical use of marijuana. In this case, plaintiff cannot show that she incurred such a penalty or was denied such a right or privilege because the harm she suffered was the loss of an employment opportunity in which she held absolutely no right or property interest.

In sum, the plain language of § 4(a) of the MMMA is clear that the statute does not provide for a cause of action in instances such as presented here, where a plaintiff cannot demonstrate that he or she was "subject to arrest, prosecution, or *penalty in any manner, or denied any right or privilege . . .* for the medical use of marihuana in accordance with [the MMMA]." MCL 333.26424(a) (emphasis added). The statute does not provide an independent *right* protecting the medical use of marijuana in all circumstances, nor does it create a protected class for users of medical marijuana. Plaintiff in this case has failed to allege facts showing that she suffered the type of harm contemplated under 333.26424(a), i.e., as applicable here, a "penalty." This statute therefore does not provide plaintiff a cause of action under these circumstances, and plaintiff has thus failed to state a claim on which relief could be granted. The trial court did not err by granting summary disposition in defendants' favor on plaintiff's MMMA-violation claim.[7]

---

[7] Although this reasoning differs from the trial court's reasoning, we may affirm a trial court's summary disposition ruling that reaches the correct result even if our reasoning differs. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

We next turn to plaintiff's breach-of-contract claim. Although a properly pleaded breach-of-contract claim is not barred by governmental immunity, *In re Bradley Estate*, 494 Mich at 371, plaintiff has nonetheless failed to adequately plead a claim for breach of contract sufficient to withstand summary disposition under MCR 2.116(C)(8).

"[A]n employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract . . . ." *Lytle*, 458 Mich at 167 (opinion by WEAVER, J.) (quotation marks and citation omitted); accord *id*. at 186 (MALLETT, C.J., concurring in part and dissenting in part). However, a plaintiff cannot maintain an action for breach of contract based on the termination of the plaintiff's employment if the plaintiff's allegations are insufficient to show that there was a promise limiting the employer's right to terminate the plaintiff's employment. *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 636; 473 NW2d 268 (1991). As previously stated, employment relationships are generally presumed to be terminable at will and for any reason or no reason, and the presumption of at will employment may be rebutted by submitting proof of a contract provision indicating either that employment is for a definite term or that discharge is forbidden without just cause. *Lytle*, 458 Mich at 163-164 (opinion by WEAVER, J.); *id*. at 186 (MALLETT, C.J., concurring in part and dissenting in part); *Rood*, 444 Mich at 116. Furthermore, "Contractual liability is consensual," and a "basic requirement of contract formation is that the parties mutually assent to be bound." *Rood*, 444 Mich at 118.

Review of plaintiff's complaint reveals that she has failed to allege any facts to support a conclusion that the conditional offer of employment was not for at-will employment. Plaintiff failed to make any allegations that the conditional offer made by the BWL included a promise that employment would be for a definite term or that employment could be terminated only for just cause. More specifically, plaintiff has not alleged that the offer included a promise that it would only be rescinded for just cause. Accordingly, the BWL could withdraw the offer of employment at any time, for any reason or no reason at all. *Id*. at 116.

Additionally, and as previously discussed, as applied to plaintiff's complaint, it is clear that § 4(a) of the MMMA does not create an affirmative right protecting the perceived employment rights of plaintiff. As such, plaintiff cannot rely on § 4(a) of the MMMA to gain an enforceable contractual right to employment where no such right previously existed. Because plaintiff has not made allegations sufficient to show that there was a promise on the part of the BWL limiting its right to withdraw the offer or otherwise terminate plaintiff's employment, plaintiff has failed to state a claim for breach of contract on which relief could be granted. *Rowe*, 437 Mich at 636. Consequently, the trial court did not err by granting summary disposition on this claim pursuant to MCR 2.116(C)(8).

Affirmed. No costs are awarded to either party. MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford

-12-