*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARTAYMIS CARTER,

UNPUBLISHED
March 30, 2023

Petitioner-Appellant,

v

No. 360055
Wayne Circuit Court
LC No. 21-008636-AA

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Respondent-Appellee.

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Petitioner, Artaymis Carter, appeals by leave granted the order of the circuit court affirming the decision of respondent, Department of Health and Human Services (DHHS), to decertify Carter and terminate her participation as a certified peer support specialist (CPSS) in the Michigan Medicaid Program. Earlier, in a final order, the DHHS had adopted a proposal for decision issued by an administrative law judge (ALJ) who recommended upholding revocation of Carter's certification and termination of her participation in the program. We affirm.

A CPSS operates as part of a treatment team providing support and guidance to consumers of mental-health services in an effort to facilitate independent living in the community. One of Carter's employers, Lincoln Behavioral Services (LBS), had initiated complaint procedures in response to reports that Carter had sexual relationships with two of the consumers with whom she worked. LBS eventually terminated Carter's employment on the grounds that she failed to abide by Medicaid provider guidelines and the code of ethics for a CPSS. The complaint was forwarded to Detroit Wayne Mental Health Authority (DWMHA), which substantiated the claims. The complaint was also provided to the DHHS, which suspended and then revoked Carter's certification and terminated her participation in the Medicaid Program. Carter unsuccessfully contested the decision in an administrative hearing and then in the circuit court.

Carter argues on appeal that the ALJ committed error by examining only the adequacy of the DHHS's investigation rather than the substance of the allegations, by denying her the opportunity to confront her accusers or engage in discovery, and by determining that there was

sufficient evidence to support the conclusion that Carter worked as a CPSS after she had lost her certification. MCL 24.306(1) provides:

> Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.
>
> (b) In excess of the statutory authority or jurisdiction of the agency.
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
>
> (d) Not supported by competent, material and substantial evidence on the whole record.
>
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
>
> (f) Affected by other substantial and material error of law.[1]

Courts must review the entire record, not just the portions that support the agency's findings, when assessing whether the agency's decision was supported by competent, material, and substantial evidence on the whole record. *In re Sangster*, 340 Mich App 60, 67; ___ NW2d ___ (2022). "Substantial evidence" is defined as evidence that a reasonable person would find acceptably sufficient to support a particular conclusion. *Id.* "This may be substantially less than a preponderance of evidence, but does require more than a scintilla of evidence." *Id.* When the administrative findings of fact and conclusions of law are primarily predicated on credibility assessments, such findings will generally not be disturbed because a reviewing court's function does not entail assessing witness credibility or resolving conflicts in the evidence. *Id.*

We review a circuit court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial-evidence test, which is essentially a clear-error standard of review. *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014). A due process argument presents a

---

[1] Const 1963, art 6, § 28, provides:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

question of constitutional law that is subject to de novo review. *In re Sangster*, 340 Mich App at 68.

We begin with the final argument presented in Carter's appellate brief. She contends that the ALJ's determination that she had continued working as a CPSS despite having her certification suspended was in error. The DHHS had suspended Carter's certification on July 3, 2019, and, upon completion of the investigation, revoked Carter's certification on September 16, 2019. On November 19, 2020, in the midst of the proceedings before the ALJ, the DHHS amended its notice to include, in addition to inappropriate relationships, the following ground in support of revocation of Carter's CPSS certification:

> After []DHHS issued the September 16, 2019 notice of revocation, you continued to work as a peer specialist for Team Wellness, in violation of the Michigan Medicaid Provider Manual, Behavioral Health and Intellectual and Development Disability Supports and Services Chapter, Section 17.3.G.2. This is another basis for revocation of your certification.

The ALJ cited and quoted the Medicaid regulation in his recommended opinion.[2] With respect to the added charge, the ALJ concluded as follows:

> Similarly, the later basis for action offered by the [DHHS] in its Amended Notice was likewise proper. The [DHHS] based that second notice on its finding that [Carter] was continuing to work as a CPSS at the Team Wellness Center after the first notice was sent, and it supported its finding with testimony regarding information it received directly from the Team Wellness Center. Moreover, while it is undisputed that [Carter] stopped billing as a CPSS prior to the [DHHS]'s first notice and [Carter] testified that she informed her immediate supervisor of the change in her status, the fact remains that [Carter] was hired as a CPSS and fired as soon as the Team Wellness Center learned that she had lost her certification, all of which suggests, as testified to by the Executive Director of Special Projects at the Team Wellness Center, [Carter] was being employed as a CPSS despite losing her certification. Accordingly, for either reason offered by the [DHHS], its decision to revoke [Carter]'s peer support specialist certification and terminate her participation as a Certified Peer Support Specialist in the Michigan Medicaid program should be affirmed.

The Executive Director of Special Operations at Team Wellness Center, Elizabeth Cichon, testified that she supervised Carter's program at the agency since Carter was hired as a CPSS in November 2018. Cichon further stated that DWMHA informed Team Wellness on October 30, 2019, that Carter had lost her certification as a CPSS; consequently, Cichon terminated Carter's employment. She additionally testified that Carter had not informed anyone at the agency that she

---

[2] This provision is a detailed description of "Peer Specialist Services" and includes the requirement that the practitioner "meet the []DHHS application approval process for specialized training and certification requirements."

had lost her certification and that Carter began billing for her services as uncertified peer support only on August 12, 2019.

Cichon and the DHHS's Director of Peer Services, Pamela Werner, explained that Carter's position required maintaining certification so that the agency could be reimbursed for servicing Medicaid customers. Werner confirmed that Carter's working as a CPSS while not certified was a violation of the applicable code of ethics, as well as the Medicaid Provider Manual. Cichon did not recall Carter's direct supervisor ever speaking to her about Carter's actions in changing her billing code, and Werner had not reviewed the billing documents.

The evidence recounted above well supported the conclusions that Carter's position was dependent on her status as a CPSS and that after her certification was suspended in July 2019, and then revoked in September 2019, she effectively continued to work in that capacity until Team Wellness was informed of her decertification at the end of October 2019. This is true even though Carter had changed her billing practices in August 2019 to indicate that she was not certified. The evidence further supported a finding that the practice of working as a CPSS while uncertified was a violation of Carter's ethical obligations. Therefore, there was competent and substantial evidence to support the ALJ's determination, adopted by the DHHS, that the DHHS had properly sanctioned Carter on this particular ground. And thus the circuit court made no clear error in upholding the ALJ's and DHHS's ruling.

Carter argues that she was not deceitful in continuing to work as a CPSS even though she was no longer certified given that she changed her billing code. Carter further asserts her supervisor must have known because she had to sign off on the billings. Yet the supervisor had not so informed Cichon.[3] But, as discussed, there was substantial evidence to support the ALJ's decision. Additionally, the evidence indicated that Carter's certification was suspended on July 3, 2019, and that she continued to bill her services as a CPSS until August 12, 2019. Moreover, the fact that Carter changed her billing practices to reflect that she was not certified did not mean that her employer had modified her position as a CPSS to that of a noncertified peer support specialist, particularly in consideration of the consumers that she served. Regardless of the billing code, the evidence demonstrated that Carter was performing the work of a CPSS.[4]

With respect to Carter's arguments in connection with her decertification for having inappropriate relationships with consumers, we decline to address and resolve the arguments because decertification and termination were appropriate on the ground that she continued performing the services of a CPSS after her certification was suspended and revoked. Even had it been improper or wrongful for the DHHS to have suspended and revoked Carter's certification on

---

[3] Cichon testified that Carter's direct supervisor "was relatively new to our organization at that time so . . . might not have even known to look" at the billing records.

[4] With respect to Carter's argument that the ALJ committed error by examining only the adequacy of the DHHS's investigation rather than the substance of the allegations, to the extent that the argument pertains to the issue concerning whether Carter worked as a CPSS after the suspension and revocation, we conclude that the ALJ clearly and plainly focused on the substance of the allegation and the supporting evidence.

the basis of the alleged relationships, we note that she did not have the freedom—at that point—to ignore the disciplinary measures and continue working as a CPSS. But we do feel compelled to discuss one matter. In a motion Carter filed seeking discovery, she requested, in part, the names of the two recipients or consumers with whom she supposedly had sexual relationships. The ALJ denied the request, indicating that while it appreciated Carter's due process concerns, "this matter is an administrative proceeding, not a criminal case . . . ." Although there was some testimony which indicated that Carter knew the names of the two consumers, Carter's attorney argued, "We don't know who she supposedly was in a relationship with. We weren't allowed to know. They were kept secret."

In *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995), this Court observed:

> Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance *to know and respond to the evidence*. [Citation omitted; emphasis added.]

In our view, there is a strong argument that not providing Carter the names of the individuals with whom she was accused of having improper relationships deprived her of the "chance to know and respond to the evidence." Although we find the ALJ's ruling troubling, we ultimately conclude that it is unnecessary to reach and resolve the issue.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello