*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DONNA SIMONTE,

      Plaintiff-Appellant,

v

TOWNSHIP OF ROSCOMMON,

      Defendant-Appellee.

UNPUBLISHED
January 21, 2026
8:55 AM

No. 375134
Roscommon Circuit Court
LC No. 24-727021-AV

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Plaintiff, Donna Simonte, owns a single-wide manufactured home and the real property on which the home is situated in Houghton Lake, Michigan, located in defendant Township of Roscommon (the Township).[1] After the home was determined to constitute a "dangerous building" in violation of the Township's dangerous-buildings ordinance and MCL 125.538, the Township ordered Simonte to either repair or demolish the home. Simonte appealed to the circuit court, which upheld the Township's decision. Because Simonte fails to establish that the circuit court erred by determining that the Township's decision was supported by competent, material, and substantial evidence, we affirm.

## I. FACTS AND PROCEEDINGS

At some point before September 5, 2023, Justin Schneider, a building inspector from the Houghton Lake Building Agency (HLBA), visited Simonte's property. He observed that the steel roof of the home had been improperly installed, the siding of the home had missing or broken fascia in spots, the decks were deteriorating, the inside of the home was in disarray, and the underside of the home was not properly sealed, which allowed critters to get inside. On September

---

[1] According to Houghton Lake's website, Houghton Lake "is an unincorporated community and census-designated place (CDP) in Roscommon County" and is "the largest unincorporated community in Northern Michigan." Houghton Lake Area Tourism Bureau website <https://www.visithoughtonlake.com/houghtonlake/> (accessed December 23, 2025).

5, 2023, the Township Board of Trustees (the Board) authorized the Township Supervisor to submit the property to the HLBA to determine whether it was in violation of the Township's dangerous-buildings ordinance.

The HLBA scheduled a dangerous-buildings hearing for October 25, 2023. Simonte did not appear at the hearing, but her representative, Don Drumheiser, appeared on her behalf. At the hearing, Schneider spoke about the condition of the home. The hearing officer, David Leroy, determined that the buildings and structures on the property were unsafe, dangerous, and "likely to fall, become detached or dislodged, or collapse, and injure persons or damage property." Leroy ordered Simonte to repair or demolish the home within 90 days, i.e., no later than January 24, 2024. The order stated that "the electrical, plumbing, mechanical, drywall, siding and skirting, and roof must . . . be repaired and up to code" and that licensed contractors must perform the repair work, which must pass all inspections.

After Simonte failed to obtain necessary permits to comply with the order, Leroy requested that the Board enforce the order. The Board scheduled a hearing for March 5, 2024, at which Simonte could appear and show cause why the home should not be demolished. Simonte failed to appear at the hearing, and Drumheiser again appeared on her behalf. At the hearing, the Board reviewed materials regarding the property, including photos. The hearing minutes indicate that neighboring residents appeared and "expressed concerns with shotty [sic] repair work, blight, mold, electrical issues, roof repair that 'flops' around, [and] sewage."

Following the hearing, the Board entered an order allowing Simonte an additional 60 days to make the repairs. After Simonte again failed to make the repairs, the Board ordered that she demolish the home and remove the debris no later than July 6, 2024. The order stated that no additional extensions of time would be provided because the Board would begin the bidding process for the demolition work and tentatively award the job to the winning bidder at the July 2, 2024 Board meeting. The order further stated that the winning bidder would proceed with demolition if Simonte failed to comply with the order by July 6, 2024.

On July 19, 2024, Simonte's attorney sent a letter to the Township Supervisor stating that it was unclear from the October 25, 2023 order what must be done to comply with the order. The letter stated that the order failed to "identify a defect or what must be done to eliminate that defect." The letter also stated that "[n]o part of the structure . . . is in danger of falling or collapsing, or likely to become detached or dislodged. Nothing in the hearing officer's findings supports this allegation." Simonte's attorney requested that demolition be delayed for 90 days to allow Simonte to make the repairs after being informed "regarding the necessary repairs."

Simonte filed an application for leave to appeal to the circuit court after the Township Supervisor declined to delay demolition. She filed motions for stay and an ex parte motion for a temporary restraining order prohibiting the Township from demolishing the home. The circuit court granted Simonte's application for leave to appeal, stating that the Township did not file an answer or otherwise object to the application.

In her appellate brief filed in the circuit court, Simonte argued that competent, material, and substantial evidence did not support the Township's determination that the home constituted a dangerous building. Simonte maintained that the dangerous-buildings hearing officer, Leroy,

improperly expanded the definition of a "dangerous building" by "tacking on" Schneider's hearing testimony to the definition of a dangerous building contained in the ordinance and statute. Simonte also asserted that no evidence supported Leroy's determination, and the Township's ratification of Leroy's determination, that the home was likely to collapse and injure persons or property. She argued that broken or missing fascia could not cause injury and that extermination rather than demolition was the proper course of action if critters infested the home. In addition, she asserted Schneider's conclusion that the inside of the home was worse than the outside did not constitute evidence and that the words "blight," "mold," and "sewage," attributable to unidentified neighboring residents at the March 5, 2024 hearing, did not support the determination that the structure was a dangerous building. Simonte maintained that the Township's decision was arbitrary and capricious because no evidence supported the decision, and demolishing the home would violate her right to substantive due process.

In response, the Township argued that Roscommon Township Ordinance 73 parallels MCL 125.539 and that the definitions of a "dangerous building" in both the ordinance and statute include a building that is damaged or deteriorating such that the structure or part of the structure was likely to become detached or collapse. The Township asserted that it followed the proper procedure, including providing notice to Simonte and offering her an opportunity to repair the structure. The Township also maintained that competent, material, and substantial evidence supported the determination that the home constituted a dangerous building. The Township relied on Schneider's October 25, 2023 testimony, stating that the siding and fascia of the home was broken or missing in spots, the decks were deteriorating, the roof had been improperly installed, and the underside of the home was not sealed off. The Township also relied on Leroy's order in which he indicated that, as a result of those conditions, part of the structure was likely to fall, become detached, or collapse and injure persons or property. The Township asserted that Simonte's claim that the structure could be repaired did not negate the determination that the structure constituted a dangerous building. In addition, the Township opposed Simonte's motion to stay demolition of the home on the basis that Simone's appeal was untimely, and she was unlikely to prevail on the merits.

Simonte filed a reply brief, asserting that the Township failed to respond to her argument that Leroy legally erred by adding language to the definition of "dangerous building" set forth in the statute and ordinance. She also maintained that, contrary to the Township's claim, she did not assert any argument regarding whether the home could be repaired. Rather, she argued that the home "as is" was not a dangerous building. Simonte moved for an expedited hearing, stating that she wished to sell the home, and, despite the Township's assertion that the home was in danger of collapsing, persons had expressed interest in purchasing it.

At the March 13, 2025 hearing, Simonte's attorney stated that he requested the photos presented to the Board on March 5, 2024, but, "maybe because of a typographical error" involving the date of the hearing, he was informed that there were no photos. Counsel asked the circuit court to view photos he brought with him to the hearing. The Township's attorney stated she had no objection to the court viewing the photos, and the court did so. Simonte's attorney argued that it was evident from the photos that the structure was not in danger of collapsing, let alone collapsing and injuring persons or property. Counsel argued that although the steel roof might not be aesthetically pleasing, it would not cause the structure to collapse. Likewise, the structure would

not collapse if critters got inside the structure. Counsel maintained that nothing about the home indicated that it was in danger of collapsing and injuring persons or property.

The Township's attorney presented the circuit court with photos of the home taken that morning. Counsel argued that, from the outside, the home was "aesthetically not that horrible," but the decks were deteriorating, the stairs were deteriorating and structurally unsound, and the metal roof was not attached to the structure itself and moved during strong winds such that it "levitates off the building." Counsel also asserted that the structure was not sealed, and water enters the building and drips to the ground through the floor boards. Further, she argued there was "open electrical work" and "open plumbing" inside the structure, "animal feces everywhere," and holes for animals to get inside the structure. She maintained that the structure constituted a dangerous building.

The circuit court stated that "the biggest problem" with this case "is there's not a lot of record," but the court determined that the photos it viewed corroborated Leroy's determination that the decks were deteriorating, the siding had missing or broken fascia, and the underside of the structure was not sealed off. The court stated that it could not determine from the photos whether the roof had been properly installed, but that the photos supported Leroy's conclusion that the structure posed a danger because it was likely to collapse or become detached or dislodged. The court noted that although Simonte was afforded an opportunity to appear and present evidence at the previous hearings, she failed to do so, and nothing presented to the court contradicted the Township's determination that the building constituted a dangerous building.

Thereafter, the court entered an order denying Simonte's appeal, but it granted Simonte's motion staying demolition of the home pending this appeal.

## II. STANDARD OF REVIEW AND LEGAL PRINCIPLES

Const 1963, art VI, § 28, provides for judicial review of a township board's decision. *JS Beck Rd, LLC v Charter Twp of Northville*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367958); slip op at 5-6. That provision states, in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

"A decision is authorized by law if it is allowed, permitted, or empowered by law." *JS Beck Rd*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). "An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Nat'l Wildlife Fed v Dep't of Environmental Quality (No 2)*, 306 Mich App 369, 373; 856 NW2d 394 (2014). When reviewing a lower court's review of an agency's decision, we must "determine whether the lower court applied correct legal principles and whether it misapprehended

or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Braska v Challenge Mfg Co*, 307 Mich App 340, 351-352; 861 NW2d 289 (2014) (quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision." *JS Beck Rd*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). "It is more than a mere scintilla but less than a preponderance of the evidence." *Id*. at ___; slip op at 6. The circuit court must defer to the agency's factual findings and may not "draw its own conclusions from the evidence presented to the administrative body." *Id*. at ___; slip op at 6 (quotation marks and citation omitted).

Further, "[q]uestions of statutory interpretation and application, including the interpretation and application of municipal ordinances, are reviewed de novo." *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). We interpret statutes and municipal ordinances in the same manner. *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 50; 981 NW2d 88 (2021). We look to the language used and accord words their plain and ordinary meanings. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 458; 965 NW2d 232 (2020). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Id*. (citation omitted). We must give effect to every word used and may not look beyond the words expressed in a provision. *Id*.

### III. ANALYSIS

"It is unlawful for any owner or agent thereof to keep or maintain any dwelling or part thereof which is a dangerous building as defined in [MCL 125.539]." MCL 125.538. Under MCL 125.539, a "dangerous building" is "a building or structure that has 1 or more of the following defects or is in 1 or more of the following conditions:"

> (a) A door, aisle, passageway, stairway, or other means of exit does not conform to the approved fire code of the city, village, or township in which the building or structure is located.

> (b) A portion of the building or structure is damaged by fire, wind, flood, deterioration, neglect, abandonment, vandalism, or other cause so that the structural strength or stability of the building or structure is appreciably less than it was before the damage and does not meet the minimum requirements of this act or a building code of the city, village, or township in which the building or structure is located for a new building or structure, purpose, or location.

> (c) A part of the building or structure is likely to fall, become detached or dislodged, or collapse and injure persons or damage property.

> (d) A portion of the building or structure has settled to an extent that walls or other structural portions of the building or structure have materially less resistance to wind than is required in the case of new construction by this act or a building code of the city, village, or township in which the building or structure is located.

(e) The building or structure, or a part of the building or structure, because of dilapidation, deterioration, decay, faulty construction, the removal or movement of some portion of the ground necessary for the support, or for other reason, is likely to partially or completely collapse, or some portion of the foundation or underpinning of the building or structure is likely to fall or give way.

(f) The building, structure, or a part of the building or structure is manifestly unsafe for the purpose for which it is used.

(g) The building or structure is damaged by fire, wind, or flood, is dilapidated or deteriorated and becomes an attractive nuisance to children who might play in the building or structure to their danger, becomes a harbor for vagrants, criminals, or immoral persons, or enables persons to resort to the building or structure for committing a nuisance or an unlawful or immoral act.

(h) A building or structure used or intended to be used for dwelling purposes, including the adjoining grounds, because of dilapidation, decay, damage, faulty construction or arrangement, or for other reason, is unsanitary or unfit for human habitation, is in a condition that the health officer determines is likely to cause sickness or disease, or is likely to injure the health, safety, or general welfare of people living in the dwelling.

(i) A building or structure is vacant, dilapidated, and open at door or window, leaving the interior of the building exposed to the elements or accessible to entrance by trespassers.

(j) A building or structure remains unoccupied for a period of 180 consecutive days or longer, and is not listed as being available for sale, lease, or rent . . . .

The Township enacted Ordinance 73, the Township's "Dangerous Buildings Ordinance," which contains provisions that closely correspond with MCL 125.539. Ordinance 73, §§ (1) and (2).[2]

The hearing officer, Leroy, determined that the structure on Simonte's property constitutes a dangerous building under MCL 125.539(c) and Ordinance 73, § 2(A)(3). Leroy's order stated:

[P]art of the building(s) or structure(s) is likely to fall, become detached or dislodged, or collapse, and injure persons or damage property. Property has deteriorating decks; siding/facia [sic] is broken and missing in spots; roof steel

---

[2] Although the parties have not provided this Court with a copy of the ordinance, it is available at <https://roscommontownshipmi.gov/wp-content/uploads/2022/12/Dangerous-Buildings-73.pdf> (accessed December 29, 2025).

installed improperly; underside of trailer not sealed off and is accessible to critters and inside of dwelling is worse than the outside.

Simonte argues that the record fails to establish that the structure is likely to collapse or that parts of it are likely to fall or become detached. She asserts that the photos presented in the circuit court showed discoloration rather than deterioration of the decks, and the photos refute the circuit court's indication that the metal roof sheeting extends off the roofline by "a foot or more." Simonte has not provided this Court with the photos that were presented to the circuit court or to the Board.[3] As the appellant, Simone bears the burden of providing this Court with a record that verifies the factual bases of her claims. *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017). An appellant waives appellate review by failing to provide this Court with "a complete record for review." *Reed v Reed*, 265 Mich App 131, 161; 693 NW2d 825 (2005). Without the photos, our ability to engage in any meaningful review of the circuit court's decision is impaired. We note, however, that the minutes of the March 5, 2024 hearing indicate that neighboring residents expressed concern that the roof "flops" around, which is consistent with the Township attorney's assertion at the circuit court hearing that the roof moves and levitates off the structure during strong winds. Therefore, based on the limited record provided to this Court, it appears that the condition of the home is such that part of the structure is likely to detach and injure persons or property. Accordingly, Simonte has failed to establish that the circuit court erred by determining that competent, material, and substantial evidence supported the Township's decision.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

---

[3] The Board's March 5, 2024 minutes indicate that it reviewed photos.